**Patricia CARLISLE, Trustee for the Heirs and Next-of-Kin of Sal Saran Scott, Decedent, Appellant,**

v.

**CITY OF MINNEAPOLIS, et al., Respondents.**

No. C1-88-1997.

Court of Appeals of Minnesota.

March 28, 1989.

Gary L. Manka, Brian L. Sobol, Scott A. Teplinsky, Katz, Davis, Manka & Haugan, Ltd., Minneapolis, for appellant.

Joseph B. Marshall, Marshall and Associates, Circle Pines, for respondents.

Heard, considered and decided by SHORT, P.J., and NIERENGARTEN and NORTON, JJ.

## OPINION

NORTON, Judge.

This is an appeal from the granting of partial summary judgment in favor of respondents City of Minneapolis, et al. Appellant Patricia Carlisle, as trustee for the heirs and next-of-kin of Sal Saran Scott, brought a claim pursuant to 42 U.S.C. § 1983. The trial court found no just reason to delay Carlisle's appeal on this issue. *See* Minn.R.Civ.P. 54.02. The three remaining counts of Carlisle's complaint alleging common law negligence are still pending in Hennepin County.

Carlisle also appeals two orders in which the trial court denied her request for copies of reports of the Minneapolis Police Department Internal Affairs Department regarding the shooting of Sal Scott. We affirm.

## FACTS

Sal Saran Scott was killed on September 21, 1984 by officers of the Minneapolis Police Department Decoy Unit. The officers were in the process of arresting Scott for robbing an unarmed undercover police officer. Scott received a contact gunshot wound to the back of his head from a 12–gauge double barreled shotgun, and died instantly.

During the early morning hours of September 21, 1984, Sergeant David Niebur,

with officers William James, William Hinz, Bruce Johnson and Kenneth Olson, were working a decoy operation for the street crimes decoy unit. Hinz portrayed an unconscious intoxicated driver in a car parked at an odd angle over the curb. Niebur and James were in a surveillance van across the street from Hinz. Olson and Johnson were stationed one block away, out of visual contact with the decoy scene.

Shortly after the decoy was set up, Sal Scott approached Hinz' vehicle. Scott asked Hinz if he was okay and Hinz did not respond. Scott opened the door, leaned in, began pushing Hinz and talking to him. Scott removed Hinz' billfold and put the contents into his pocket. Scott then took a ring off Hinz' finger. After the money was taken from Hinz, Hinz gave a signal, by a steady pushing of the brake lights on his vehicle, to Niebur and James that a crime had been committed.

After Hinz became more responsive, Scott lifted or pulled Hinz from the car. As he was pulled from the car, Hinz fell to the ground toward the rear end of the vehicle. Falling to the ground was a signal to the other officers that Hinz believed he was in danger.

Scott pulled Hinz back to his feet and pushed him against the car. James ran from the van to the decoy vehicle when he saw the second signal. James was carrying a double barreled shotgun at this time. Hinz stated that he heard James yell that he was a police officer, and glanced toward the direction of the voice, and noted that James was running toward him. Hinz stated that Scott, while still pushing him partially over the roof of the car, suddenly spun to his right, away from Hinz and toward James. Hinz then heard a muffled sound of the shotgun discharging.

Niebur, on the other hand, stated in his statement to the police and in his affidavit that James was momentarily distracted by Hinz moving on the ground. At the moment James turned his attention to Hinz, Scott suddenly spun and lunged at James. When Scott lunged at James, the muzzle of the shotgun, being held in a port arms position, impacted with the left side of Scott's head causing the gun to discharge in an upward direction.

The photographs of the scene show Scott lying on his back perpendicular to the car with his feet at the base of the car. The autopsy and homicide reports indicate an entrance wound on the left side of Scott's head at his ear, and suggest there was a cut under the ear. The medical examiner's report also notes blood spattering and cuts from skull fragments on the back of Scott's hands.

In answering questions before a task force on the police decoy unit, Niebur stated that the police decoy unit had been charged with excessive force on prior occasions. Niebur additionally said that the police decoy unit was underfunded; suffered from a lack of training; and was not sufficiently supervised by his superior officers, leaving him in charge of the unit.

The trial court granted partial summary judgment for respondents on Carlisle's claim brought pursuant to 42 U.S.C. § 1983. The court found that the allegations and the totality of the circumstances surrounding the arrest and death of Scott did not comprise sufficient evidence to support a reasonable inference of anything more than mere negligence on the part of the city, its police department, or individual police officers. Appellant argues that all of the evidence submitted including the photographs, autopsy report, toxicologist and medical examiner reports, together with the prior inconsistent statements of the officers, created a genuine issue of fact as to the events of the evening.

## ISSUES

I. Are respondents entitled to summary judgment on appellant's 42 U.S.C. § 1983 claim?

II. Did the trial court err in denying appellant's discovery request?

## ANALYSIS

### I.

Minn.R.Civ.P. 56.03 states that summary judgment shall be rendered if "the plead-

ings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law."

Minn.R.Civ.P. 56.05 requires that supporting and opposing affidavits be made "on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall affirmatively show that the affiant is competent to testify to the matters stated therein." In these opposing affidavits, a party must present specific facts showing that there is a genuine issue for trial. *Id.*

The United States Supreme Court has stated that the plain language of Rule 56 mandates the entry of summary judgment,

> after adequate time for discovery and upon motion, against the party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The supreme court does not mean to say "that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Id.* at 324, 106 S.Ct. at 2553. Fed. R.Civ.P. 56(e) [Minn.R.Civ.P. 56.05] only requires summary judgment to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) [56.03], except the mere pleadings themselves. *Id.*

The summary judgment standard under the federal rules mirrors "the standard for a directed verdict under Fed.R.Civ.P. 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505,

2511, 91 L.Ed.2d 202 (1986). The genuine issue summary judgment standard is very close to the reasonable jury directed verdict standard. *Id.* at 251, 106 S.Ct. at 2511.

■ A nonmoving party must offer significant probative evidence tending to support its complaint, discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion. *Id.* at 256–57, 106 S.Ct. at 2514–15. Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery. *Id.* at 257, 106 S.Ct. at 2514–15. When a moving party has carried its burden under Rule 56(c) [Minn.R.Civ.P. 56.03], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

■ 42 U.S.C. § 1983 creates no substantive rights, but merely provides remedies for deprivation of rights established elsewhere. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 (1985). The intentional exercise of excessive force by a police officer is a violation of the fourth amendment guarantee against unreasonable seizure. *Tennessee v. Garner,* 471 U.S. 1, 8–23, 105 S.Ct. 1694, 1699–1707, 85 L.Ed.2d 1 (1985). Excessive force is force which shocks the conscience or which infringes a specific constitutional guarantee and is an intentional abuse of official power. *New v. City of Minneapolis,* 792 F.2d 724, 726 (8th Cir.1986).

■ No deprivation of due process rights results from the negligent act or omission by an official causing unintended injury to life, liberty or property. *Daniels v. Williams,* 474 U.S. 327, 333, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986). If a municipality fails to train its police force, or if it does so in a grossly negligent manner so

that it inevitably results in police misconduct or the deliberate indifference to constitutional rights, the municipality may fairly be said to have authorized the violations. *Warren v. City of Lincoln, Nebraska*, 816 F.2d 1254, 1263 (8th Cir.1987). Moreover, the United States Supreme Court has recently held, "that the inadequacy of police training may serve as the basis for section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom police come into contact." *City of Canton, Ohio v. Harris*, —— U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Sal Scott was not armed at the time of this incident. According to the affidavits of the police officers, Scott first appeared to comply with officer James' order to place his hands on the roof of the car, but then turned, spun or lunged at James. The unrebutted evidence is that in spinning or lunging as Scott did, his head inadvertently impacted with the muzzle of the shotgun. There is no evidence that James intended to fire the gun, nor is there any evidence that he intentionally hit Scott with the gun.

Even in viewing the autopsy report and other reports which show that Scott was shot in the back of the head by the ear, Carlisle has presented no evidence to show that the discharge of the gun by James was anything more than mere negligence; there is no showing of gross negligence or reckless indifference by James in running to the police decoy and the suspect. There is only mere speculation on the part of appellant that James intentionally hit Scott with the shotgun. This is not enough to rebut the affidavits supplied by the police officers to the contrary. *See* Minn.R.Civ.P. 56.05.

■ Although there are discrepancies as to precisely how Scott was killed, there is no evidence that officer James intentionally discharged the shotgun, or was grossly negligent in the manner in which he carried the shotgun and approached the suspect. Appellant needed to produce some evidence as provided in Minn.R.Civ.P. 56.03 to create a genuine issue of material fact to show that the death of Scott was based on more

than mere negligence. This evidence could have included an affidavit by an expert who could state that the police officer's conduct and the training by the police department in this incident, were grossly negligent or was done with deliberate indifference to the rights of persons.

We need not decide whether appellant's attorney's affidavit, along with unsworn exhibits were in the proper form as required by Minn.R.Civ.P. 56.05. Even if these documents are considered, any inference other than mere negligence is speculation. However, we note that other courts would not allow such an affidavit and unsworn or uncertified exhibits. *See United States v. Bosurgi*, 530 F.2d 1105, 1111–12 (2nd Cir.1976) (affidavit made by the opposing attorney which was not based on his personal knowledge amounted to hearsay; and 56(e) [56.05] imposes a mandatory requirement that the affidavits be made on personal knowledge, and any facts stated in these affidavits are not sufficient for a summary judgment motion); *Cummings v. Roberts*, 628 F.2d 1065, 1068 (8th Cir.1980) (seventeen pages of medical records submitted with an affidavit, but not certified or sworn as required by Fed.R.Civ.P. 56(e), were not proper for summary judgment; and a statement in an affidavit regarding an investigation could not be considered, because it was not based on personal knowledge).

The trial court did not reach the issues of 1) any qualified immunity on the part of officer James, or 2) a causal connection between the city or the police department's policy or custom which was the "moving force" of the alleged constitutional violation. Because we find that appellant failed to create a genuine issue as to whether a constitutional violation has occurred, we need not reach these issues.

## II.

The trial court on two separate occasions denied Carlisle's request to discover a Minneapolis Police Department Internal Affairs report on the incident involving the death of Sal Scott. This court will not interfere with a trial court's determination

on discovery unless it clearly appears that the order has no reasonable support. *Thermorama, Inc. v. Shiller*, 271 Minn. 79, 83, 135 N.W.2d 43, 46 (1965). Appellant has produced no evidence to show that this denial was an abuse of discretion; accordingly, we affirm the trial court.

## DECISION

The trial court correctly granted partial summary judgment on appellant's claim brought pursuant to 42 U.S.C. § 1983.

Affirmed.

NIERENGARTEN, Judge (dissenting).

I respectfully dissent. Viewing the evidence in a light most favorable to the non-moving party, as we must in reviewing a summary judgment, I believe the evidence is sufficient to preclude summary judgment on the appellant's section 1983 claim.

Although the evidence largely is circumstantial, I believe there is sufficient evidence from which a jury reasonably could conclude the fatal shotgun blast was caused by something other than mere negligence. The officers' statements about the circumstances surrounding the shooting are inconsistent and contradictory in some material respects. In addition, the location and nature of Scott's wounds, the physical evidence at the scene of the shooting, and the forensic evidence from the autopsy raise fact issues with respect to the circumstances under which the shotgun was discharged.

> [I]f any doubt exists as to the existence of a genuine issue as to a material fact, the doubt must be resolved in favor of finding that the fact issue exists. Facts, inferences, or conclusions that may be drawn by a jury are fact issues.

*Rathbun v. W.T. Grant Co.*, 300 Minn. 223, 230, 219 N.W.2d 641, 646 (1974).

The evidence in the record shows there are genuine issues of material fact which must be resolved by a jury. Accordingly, I would reverse.