Sandra S. PETERSON, Respondent,

v.

COLONIAL INSURANCE OF CALIFORNIA, Appellant,

League of Minnesota Cities Insurance Trust, Respondent.

No. C3–92–1259.

Court of Appeals of Minnesota.

Dec. 15, 1992.

Michael Kiedrowski, Marker & Oskie, Ltd., Minneapolis, for appellant.

Gary L. Manka, Katz & Manka, Ltd., Minneapolis, for Sandra S. Peterson.

George C. Hottinger, Erstad & Riemer, P.A., Minneapolis, and John E. Hennen, St. Paul, for League of Minnesota Cities Ins. Trust.

Considered and decided by RANDALL, P.J., and DAVIES and FLEMING, JJ.*

## OPINION

DAVIES, Judge.

Colonial Insurance appeals from a summary judgment holding it primarily responsible for payment of basic economic loss benefits to its insured, Sandra Peterson.

---

* Retired judge of the district court, serving as judge of the Court of Appeals by appointment

Colonial claims primary coverage should be provided by respondent, the insurer of the police vehicle she occupied when injured. We affirm.

## FACTS

Sandra Peterson was injured in an automobile accident that occurred when she was a passenger in a car driven by Winona County Sheriff's Deputy Timothy O'Brien. On the day of the accident, Peterson and O'Brien were working undercover for the Southeastern Minnesota Narcotics Task Force ("SEMNTF").

An agreement between Peterson and SEMNTF (through the Rochester Police Department) specified that Peterson would work as an independent contractor on a case or time basis. She was responsible for reporting any income without withholding, was not entitled to workers' compensation or unemployment compensation, and agreed not to represent herself to others as an employee or representative of the Rochester Police Department.

Peterson was paid in cash for her work for SEMNTF. Peterson was able to choose when she wanted to work and had the right to choose or refuse proposed assignments from SEMNTF. While working for SEMNTF, Peterson provided similar services from time to time to the South Central Drug Investigative Unit, to the City of Caledonia, and to Hennepin County.

The vehicle in which Peterson was riding had been seized by the state and was made available to Deputy O'Brien for use in undercover police work. The car was insured by respondent, League of Minnesota Cities Insurance Trust ("LMCIT"). LMCIT began paying Peterson's no-fault benefits, but when it learned that Peterson owned and insured a private car, LMCIT asserted that the insurer of her personal vehicle, Colonial, should be primarily responsible for payment of no-fault benefits. In response, Colonial claimed that the vehicle involved was being used in the business of

pursuant to Minn. Const. art. VI, § 2.

transporting persons or property and that LMCIT was, therefore, primarily responsible pursuant to Minn.Stat. § 65B.47, subd. 1 (1988). Alternatively, Colonial claimed that Peterson was an employee of SEMNTF who was injured while occupying an employer-furnished vehicle and that LMCIT was, therefore, primarily responsible under Minn.Stat. § 65B.47, subd. 2.

When each insurer took the position that the other was responsible for her no-fault benefits, Peterson commenced the present declaratory judgment action to determine which of them was primarily responsible. On cross-motions for summary judgment, the trial court determined that Colonial, her personal insurer, was primarily responsible.

## ISSUES

I. Did the trial court err in holding that the vehicle in which Peterson was riding was not being used in the business of transporting persons or property?

II. Did the trial court err in holding Peterson was not an employee of SEMNTF?

## ANALYSIS

 In reviewing a summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court correctly applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). A genuine issue must be established by "substantial evidence," that is, by evidence sufficient to avoid a directed verdict at trial. *Murphy v. Country House, Inc.*, 307 Minn. 344, 351–52, 240 N.W.2d 507, 512 (1976).

 The trial court's decision here was based on its interpretation of Minn.Stat. § 65B.47 (1988). Interpretation of a statute is a question of law which this court reviews de novo. *Meister v. Western Nat'l Mut. Ins. Co.*, 479 N.W.2d 372, 376 (Minn. 1992).

### I. Business of Transporting Persons or Property

 If Peterson's injuries occurred while the vehicle she occupied was being used in "the business of transporting persons or property," that vehicle's insurer is primarily responsible for the payment of Peterson's no-fault benefits. Minn.Stat. § 65B.47, subd. 1 (1988).

The No–Fault Act does not define the business of transporting persons or property, but the intention is to place the exposure for injuries to persons occupying a vehicle used in a business on the insurer of the business's vehicles. Theodore J. Smetak et al., *The Minnesota Motor Vehicle Insurance Manual*, 119 (Minn.Inst. of Legal Educ.1991). Occupants of taxicabs and delivery trucks, for example, come within the first level of priority. *Id.* In some cases, it is clear that a vehicle is being used in the business of transporting persons or property. *See e.g., American Family Ins. v. Metropolitan Transit Comm'n*, 424 N.W.2d 825 (Minn.App.1988) (MTC bus is clearly in the business of transporting persons or property). In some cases, when the vehicle is not for hire, the decision is more difficult. *See Home Mut. Ins. Co. v. Synder*, 356 N.W.2d 780 (Minn.App.1984) (vehicle being used by potato farmer at time of accident to deliver his own potatoes to retailers was "being used in the business of transporting persons or property").

The fact that a vehicle is used in connection with a person's occupation is insufficient by itself to make this provision applicable. The use to which the vehicle is being put must be the *business of transporting* persons or property. This implies more than transporting a driver, or driver's companion. That is a tangential connection between use of the motor vehicle and a person's occupation.[1] Such a tangential connection is all that is present here.

We hold the vehicle involved in this accident was not being used in the business of transporting persons or property. The car

---

1. We believe the supreme court's discussion of "business vehicles" in *Meister v. Western Nat'l Mut. Ins. Co.*, 479 N.W.2d 372 (Minn.1992), although using a term (business vehicle) not found in the statute, supports our holding here.

was being used in undercover police work, not a transportation business.[2]

## II. Employee Occupying Employer's Vehicle

Colonial contends the vehicle involved in this case was supplied by Peterson's employer to an employee and, therefore, LMCIT is primarily responsible pursuant to Minn.Stat. § 65B.47, subd. 2. We disagree. Peterson was an independent contractor, not an employee of SEMNTF; therefore, subdivision 2 does not apply.

■ Whether a worker is an employee or an independent contractor presents a mixed question of law and fact. *Wise v. Denesen Insulation Co.*, 387 N.W.2d 477, 479 (Minn. App.1986). The label given by the parties is not determinative. *Johnson v. Independent Sch. Dist. No. 535*, 291 N.W.2d 699, 702 (Minn.1980).

■ In deciding whether a worker is an independent contractor or an employee, courts in Minnesota look at the following factors:

> (1) The right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge. In determining whether the status is one of employee or independent contractor, the most important factor considered in light of the nature of the work involved is the right of the employer to control the means and manner of performance.

*Guhlke v. Roberts Truck Lines*, 268 Minn. 141, 143, 128 N.W.2d 324, 326 (1964) (citations omitted), *quoted in Ossenfort v. Associated Milk Producers, Inc.*, 254 N.W.2d 672, 676 (Minn.1977). Regarding the right of control, the supreme court has stated:

> The determinative right of control is not merely over *what* is to be done, but primarily over *how* it is to be done. Basically, it is the distinction between a person who is subject to orders as to *how* he does his work and one who agrees only to do the work in his own way.

*Frankle v. Twedt*, 234 Minn. 42, 47, 47 N.W.2d 482, 487 (1951) (emphasis in original), *quoted in Ossenfort*, 254 N.W.2d at 676. Although these cases did not involve the No–Fault Act, we find the analysis helpful in determining whether Peterson was an employee for purposes of section 65B.47, subdivision 2.

■ In the present case, the facts establish an independent contractor relationship. Peterson was supposed to supply SEMNTF with information regarding drug trafficking. SEMNTF did not direct Peterson in how to obtain information.

SEMNTF had no control over the premises where Peterson did her work. On the day in question, for example, Peterson was doing her work in a bar. Peterson's work, by its very nature, does not lend itself to strict supervision.

In addition, Peterson was paid in cash by SEMNTF; no taxes were withheld. Peterson had the right to refuse work, a right at odds with an employer-employee relationship. She also worked for other law enforcement agencies and agreed she was not entitled to workers' compensation or unemployment compensation from SEMNTF.

■ Colonial suggests that further discovery may reveal that SEMNTF exercised significant control over how Peterson performed her duties. Colonial has already had an opportunity to conduct discovery. In order to defeat a properly supported motion for summary judgment, a nonmoving party that has had a full opportunity to conduct discovery must produce affirmative evidence, even if the evidence is likely to be within the possession of the moving party. *Carlisle v. City of Minneapolis*, 437 N.W.2d 712, 715 (Minn.App.1989).

When a party moving for summary judgment has carried its burden under Minn. R.Civ.P. 56.03, the nonmoving party "must do more than simply show that there is some * * * doubt as to the material facts." *Id.*

2. A paddy wagon likely would be a different matter.

## DECISION

We hold that the trial court properly granted Peterson's summary judgment motion against Colonial. The trial court properly concluded that Colonial, not LMCIT, is the primary reparation obligor under Minn. Stat. § 65B.47, because the vehicle used for undercover police work was not being used in the business of transporting persons or property under Minn.Stat. § 65B.47, subd. 1, and Peterson was not an employee of SEMNTF for purposes of Minn.Stat. § 65B.47, subd. 2.

Affirmed.