**DAKOTA FIRE INSURANCE COMPANY, Respondent,**

**American Family Insurance Group, Respondent,**

v.

**HARTFORD FIRE INSURANCE COMPANY, Appellant.**

**No. C6–96–1264.**

Court of Appeals of Minnesota.

Feb. 11, 1997.

Warren H. Albrecht, Jr., William P. Harrie, Nilles, Hansen & Davies, Ltd., Fargo, ND, for Respondent Dakota Fire Insurance Company.

Steven F. Lamb, Aamodt & Lamb, Fargo, ND, for Respondent American Family Insurance Group.

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const.

Thomas R. Olson, Ronald J. Knoll, Jeffries, Olson, Flom & Bullis, P.A., Moorhead, for Appellant.

Considered and decided by KLAPHAKE, P.J., SCHUMACHER and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge.\*

Appellant Hartford Fire Insurance Company challenges summary judgment which granted indemnification of payment of economic loss benefits at $20,000 each to respondents Dakota Fire Insurance Company and American Family Insurance Group. Appellant argues that the district court miscategorized the vehicle in question under Minn. Stat. § 65B.47, which prioritizes the obligation of insurers for coverage of basic economic loss benefits. We affirm.

## FACTS

On February 4, 1994, students from Josef's School of Hair Design (Josef's) of Fargo, North Dakota went on a school field trip to Minneapolis. The vehicle Josef's used for the trip, a 15–person van, was rented from Richards Transportation Service, Inc. (Richards). Richards insured the van with appellant Hartford Fire Insurance Company.

The van was involved in a multiple vehicle accident near Alexandria. Tonya Degroat was injured and Cynthia Allrich was killed; both women were students at Josef's. Tonya Degroat was insured by her parent's personal auto insurance policy with respondent Dakota Fire Insurance Company. Cynthia Allrich was insured by her personal auto insurance policy with respondent American Family Insurance Group.

Dakota Fire paid $20,000 in medical expenses for Tonya Degroat. American Family paid $20,000 for funeral and other benefits for Cynthia Allrich. Respondents Dakota Fire and American Family sought to be indemnified by appellant. Respondents sought and were granted summary judgment, which

art. VI, § 10.

awarded Dakota Fire and American Family each $20,000.

## ISSUES

I. Was the vehicle in question being used in the business of transporting persons under Minn.Stat. § 65B.47?

II. Does the vehicle qualify as either a commuter van or a bus?

## ANALYSIS

Appellant challenges the district court's grant of summary judgment in favor of respondents. On appeal from summary judgment, this court reviews the record to determine whether issues of material fact exist and whether the trial court erred in applying the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990).

Appellant asserts that (1) the vehicle in question was not being used in the business of transporting persons or property, and (2) if the vehicle was being used in the business of transporting people or property, it falls into one of the statutory exceptions for either a commuter van or a bus. These issues revolve around statutory interpretation and are therefore questions of law, and subject to *de novo* review. *Hallas v. Naegele Outdoor Advertising, Inc.,* 541 N.W.2d 594, 596 (Minn.App.1995).

### I. Use in the Business of Transporting People

■ Appellant argues that the van was not being used in the business of transporting people or property. When there is an injury to an occupant of a motor vehicle that is being "used in the business of transporting persons or property," the insurer of the vehicle must pay the basic economic loss benefits. Minn.Stat. § 65B.47, subd. 1 (1994).

The district court found as a matter of law that the van in question was clearly being used in the commercial transport of persons and that appellant must indemnify respondents for basic economic loss benefits. Appellant argues that Richards was only leasing the van to Josef's, and therefore was not in the business of transporting persons or property. Appellant points to Richards' lack of control over the vehicle: Richards did not supply a driver, it did not mandate a route, it did not know who would be the individual passengers, it did not charge a fee to individual passengers for transport. We disagree. Even though Richards did not exercise total control over the transport of Josef's students, the van was nonetheless used in the commercial transport of persons. Details such as the supplying of a driver matter little when Richards is a business devoted to providing transportation: that was why Josef's had gone to Richards to supply the van. Most importantly, in 1989, Richards applied for, and was granted, a Special Certificate of Public Convenience and Necessity authorizing "[t]ransportation of passengers and their baggage, in special and charter operations, between points in North Dakota."

Appellant argues that while sometimes Richards is in the business of transporting passengers, at other times it merely leases vehicles. In this case, appellant argues, the accident took place with a vehicle that Richards had leased.

Regardless of whether Richards supplied the driver (or saw to other details of the transport), the van was being used in the business of transporting people when the accident occurred. There has been little case law on this point in Minnesota. In a case in which a passenger in a potato truck was injured, this court concluded that the truck was being used in the business of transporting persons or property. *Home Mut. Ins. Co. v. Snyder,* 356 N.W.2d 780, 785 (Minn. App.1984). In another case, however, when an injury occurred in an undercover police car, this court held that the car was being used in undercover police work, and was not being used in the business of transporting people or property. *Peterson v. Colonial Ins. of California,* 493 N.W.2d 152, 154 (Minn.App.1992).

This case falls more clearly within the statutory meaning of "being used in the business of transporting persons or property." Especially when considering the rationale behind the statute—requiring those in the transportation business to bear the risks as a

cost of business [1]—it makes sense that the van would be considered to be in use in the business of transporting persons.

## II. Van as Either a Commuter Van or a Bus

■ Appellant argues that the van qualifies as either a commuter van or a bus, and therefore falls into one of the statutory exceptions to Minn.Stat. § 65B.47, subd. 1. *See* Minn.Stat. § 65B.47, subd. 2.

> The statute defines a "commuter van" as a motor vehicle having a capacity of seven to 16 persons which is used principally to provide prearranged transportation of persons to or from their place of employment or to or from a transit stop authorized by a local transit authority which vehicle is to be operated by a person who does not drive the vehicle as a principal occupation but is driving it only to or from the principal place of employment, to or from a transit stop authorized by a local transit authority or for personal use as permitted by the owner of the vehicle.

Minn.Stat. § 65B.43, subd. 12. This definition simply does not apply to the van in question, which was being used for a vocational school's field trip.

The term "bus" is not defined for purposes of prioritization of insurance, but the term is defined for purposes of registration, taxation, and sale:

> "Bus" means (1) every motor vehicle designed for carrying more than 15 passengers including the driver and used for transporting persons, and (2) every motor vehicle that is (i) designed for carrying more than ten passengers including the driver, (ii) used for transporting persons, and (iii) owned by a nonprofit organization and not operated for hire or for commercial purposes.

Minn.Stat. § 168.011, subd. 9 (1994).

Again, this definition fails to describe the van in question: first, the van held a maximum capacity of 15 people, including the driver, and second, the van was not owned by a nonprofit organization and it was operated for commercial purpose.

Appellant argues that it qualifies as a bus because the rental agreement is titled "Bus Rental Agreement." However, upon examining the agreement, it is clear that it is a standardized form which should not be used to define the vehicle in question.

## DECISION

We conclude that the district court properly found that the vehicle in this case was being used in the business of transporting persons under Minn.Stat. § 65B.47, and that the vehicle does not qualify under the statute's exceptions for commuter vans or busses.

**Affirmed.**

**1.** *See* Michael K. Steenson, 1 *Minnesota No-* *Fault Automobile Insurance,* 127–28 (1996).