MOUNTAIN PEAKS FINANCIAL
SERVICES, INC.,
Respondent,

v.

Catherine A. ROTH–STEFFEN,
Appellant.

No. A09–1086.

Court of Appeals of Minnesota.

Feb. 16, 2010.

Michael D. Johnson, Gurstel, Staloch & Chargo, P.A., Golden Valley, MN, for respondent.

Paul L. Ratelle, Jeffrey W. Jones, Fabyanske Westra Hart & Thomson, P.A., Minneapolis, MN, for appellant.

Considered and decided by BJORKMAN, Presiding Judge; KLAPHAKE, Judge; and HALBROOKS, Judge.

## OPINION

BJORKMAN, Judge.

On appeal from summary judgment, appellant asserts that respondent's student-loan collection action is barred by Minnesota's six-year statute of limitations. Because we conclude that respondent's action is not time-barred and that the undisputed evidence supports respondent's claims, we affirm.

## FACTS

In May 1998, appellant Catherine Roth–Steffen graduated from law school with over $100,000 in school loans from more than a dozen lenders. Of this total, Roth–Steffen received $20,350 from the Missouri Higher Education Loan Authority (MOHELA) CASH Loan program through loans disbursed in 2005 and 2007. As of November 5, 1998, Roth–Steffen had incurred interest on these loans (MOHELA loan) in the amount of $3,043.28. Roth–Steffen listed the balance of $23,401.28 in a loan consolidation application she submitted in December 1998. She requested that the MOHELA loan not be consolidated with her other loans.

In February 2003, MOHELA assigned ownership of the MOHELA loan to Guarantee National Insurance Company (GNIC), which, in turn, assigned the loan for collection to respondent Mountain Peaks Financial Services, Inc. (Mountain Peaks). Mountain Peaks commenced a collection action in Norfolk County, Virginia, but dismissed it, without prejudice, on August 29, 2007, pursuant to Va.Code Ann. § 8.01–380 (2009).

Mountain Peaks subsequently commenced this action on October 9, 2007. Mountain Peaks' complaint, and the affidavit in support of its first motion for summary judgment, both erred by listing Mountain Peaks as the originator of the loan. Upon notice of its error, Mountain Peaks withdrew its motion and requested leave to amend the complaint, which was granted. Five months later, Mountain Peaks renewed its motion for summary judgment with a corrected affidavit and additional supporting documentation.

In its summary judgment motion, Mountain Peaks claimed that it holds the MOHELA loan and that it is entitled to judgment in the amount of the outstanding balance, $23,120.52, and additional interest at the rate of 2.54% from July 19, 2007. In response, Roth–Steffen asserted that the MOHELA loan is not hers, and that the Mountain Peaks' motion is not supported by admissible evidence. Roth–Steffen also argued that this action is barred by Minnesota's six-year statute of limitations for collection on promissory notes. See Minn.Stat. § 336.3–118 (2008).

The district court granted the motion, determining that Mountain Peaks owns Roth–Steffen's loan, that Mountain Peaks is a valid assignee of MOHELA's right under the Higher Education Act not to be subject to any state statutes of limitation, and that Roth–Steffen owes Mountain Peaks $23,120.52, plus interest. This appeal follows.

## ISSUES

I. Does the Higher Education Act, 20 U.S.C. § 1091a, preempt Minnesota statutes of limitation in collection actions initiated by assignees of named lenders?

II. Is Mountain Peaks' motion supported by admissible, undisputed evidence?

## ANALYSIS

We review an appeal from summary judgment de novo, asking whether there are any genuine issues of material fact and whether either party is entitled to judg-

ment as a matter of law. Minn. R. Civ. P. 56.03; *STAR Ctrs., Inc., v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 77 (Minn. 2002). We view all facts in the light most favorable to the party against whom summary judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

## I.

Enacted in 1965, the Higher Education Act was the first comprehensive government program designed to provide scholarships, grants, work-study funding, and loans for students to attend college. *See* Pub.L. No. 89–329, 79 Stat. 1219 (Nov. 8, 1965), as amended, 20 U.S.C. §§ 1001–1161aa–1 (2008); Julie Margetta Morgan, *Consumer–Driven Reform of Higher Education: A Critical Look at New Amendments to the Higher Education Act*, 17 J.L. & Pol'y 531, 540 (2009). Pursuant to the act, the federal government makes loans and guarantees loans made by private lenders. *See* 20 U.S.C. § 1085(a) (2008) (defining eligible institution); 34 C.F.R. §§ 682.411, .507 (2008). In 1991, in response to rising loan defaults and an unfavorable legal ruling, Congress adopted the Higher Education Technical Amendments. Pub.L. No. 102–26, 105 Stat. 123 (codified in part in 20 U.S.C. § 1091a (1991)); 137 Cong. Rec. H1808–02, statement of Rep. Ford ("Second, [this bill] overcomes a recent circuit court decision that puts in jeopardy the ability of the Department of Education to collect defaulted student loans through offsets of income tax refunds and other means.")

The amendments eliminate all statutes of limitation on actions to recover on defaulted student loans for certain classes of lenders. *United States v. Phillips*, 20 F.3d 1005, 1007 (9th Cir.1994). These lenders are defined in section 1091a:

(2) Notwithstanding any other provision of statute, regulation, or adminis-

trative limitation, no limitation shall terminate the period within which suit may be filed, a judgment may be enforced, or an offset, garnishment, or other action initiated or taken by—

(A) an institution that receives funds under this subchapter and part C of subchapter I of chapter 34 of title 42 that is seeking to collect a refund due from a student on a grant made, or work assistance awarded, under this subchapter and part C of subchapter I of chapter 34 of title 42;

(B) a guaranty agency that has an agreement with the Secretary under section 1078(c) of this title that is seeking the repayment of the amount due from a borrower on a loan made under part B of this subchapter after such guaranty agency reimburses the previous holder of the loan for its loss on account of the default of the borrower;

(C) an institution that has an agreement with the Secretary pursuant to section 1087c or 1087cc(a) of this title that is seeking the repayment of the amount due from a borrower on a loan made under part C or D of this subchapter after the default of the borrower on such loan; or

(D) the Secretary, the Attorney General, or the administrative head of another Federal agency, as the case may be, for payment of a refund due from a student on a grant made under this subchapter and part C of subchapter I of chapter 34 of title 42, or for the repayment of the amount due from a borrower on a loan made under this subchapter and part C of subchapter I of chapter 34 of title 42 that has been assigned to the Secretary under this subchapter and part C of subchapter I of chapter 34 of title 42.

20 U.S.C. § 1091a(a)(2). For convenience, we refer to the entities described in this statute as "named lenders."

Mountain Peaks argues that it is exempt from Minnesota's statutes of limitation because it is a valid assignee of MOHELA, a lender that has an agreement with the Secretary of Education under 20 U.S.C. § 1091a(a)(2)(B). Roth–Steffen acknowledges that MOHELA is a named lender but argues that because Congress did not expressly identify assignees as named lenders, section 1091a does not preempt state statutes of limitation for claims asserted by assignees of named lenders.

Application of section 1091a to assignees of named lenders is an issue of first impression. To resolve the issue, we consider the statute's terms, general rules of statutory construction, the statute's purpose, and how courts have applied the collection provisions of other federal loan statutes.

■ When interpreting federal statutes, courts presume that the "legislature says in a statute what it means and means in a statute what it says there." *Dodd v. United States,* 545 U.S. 353, 357, 125 S.Ct. 2478, 2482, 162 L.Ed.2d 343 (2005) (quotation omitted). In the absence of ambiguity, "the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Id.* at 358, 125 S.Ct. at 2483 (quotation omitted); *accord Swenson v. Emerson Elec. Co.,* 374 N.W.2d 690, 699 (Minn.1985).

Section 1091a does not, by its terms, extend its statutes-of-limitation exemption to assignees of named lenders. Nor does the statute expressly preclude application of the exemption to assignees. Accordingly, we apply other rules of statutory construction.

■ Roth–Steffen urges us to resolve the issue of section 1091a's application to assignees of named lenders by applying the maxim *expressio unius est exclusio alterius.* This maxim applies when the "items expressed are members of an associated group or series, justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.,* 537 U.S. 149, 168, 123 S.Ct. 748, 760, 154 L.Ed.2d 653 (2003) (quotation omitted); *accord Nelson v. Productive Alternatives, Inc.,* 715 N.W.2d 452, 457 (Minn. 2006). Under the logic of *expressio unius,* there is merit to restricting application of the statutes-of-limitation exemption contained in section 1091a to only named lenders. These named lenders fall into one of two categories: government agencies and entities that extend loans under the Federal Family Education Loan Program as described in 20 U.S.C. §§ 1087–1087ii (2008). *See* 20 U.S.C. § 1091a; Glenn E. Roper, *Eternal Student Loan Liability: Who Can Sue Under 20 U.S.C. § 1091A?* 20 BYU J. Pub.L. 35, 35 (2005). Assignees such as Mountain Peaks do not fall into either category.

■ But courts interpreting federal statutes must also presume that Congress intended to preserve the common law:

> Congress is understood to legislate against a background of common-law adjudicatory principles.... Thus, where a common law principle is well established ... the courts may take it as a given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident.

*Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 108, 111 S.Ct. 2166, 2169–70, 115 L.Ed.2d 96 (1991) (quotation and citations omitted) (holding that collateral

estoppel and res judicata apply to quasi-judicial agency decisions).

 The common law of most states, including Minnesota, has long recognized that "[a]n assignment operates to place the assignee in the shoes of the assignor, and provides the assignee with the same legal rights as the assignor had before assignment." *Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 803 (Minn. 2004); *see generally* Restatement (Second) of Contracts § 317 (1981) (Assignment of a Right). Contractual rights and duties are generally assignable, including the rights to receive payment on debts, obtain non-monetary performance, and recover damages. Restatement (Second) of Contracts § 316 (1981). But an assignor may not transfer rights that are personal, such as recovery for personal injuries or performance under contracts that involve personal trust or confidences. *See Travertine Corp. v. Lexington–Silverwood*, 683 N.W.2d 267, 270 (Minn.2004) (contracts); *Nat'l Union Fire Ins. Co. v. Grimes*, 278 Minn. 45, 49, 153 N.W.2d 152, 154 (1967) (personal injury); *see generally* Restatement (Second) of Contracts § 317 cmt. c. Under the common law, a contractual right to recover student-loan debt is assignable and does not fall within the personal-rights exclusion to the assignment rule.

 Not only is application of section 1091a to assignees of named lenders consistent with the common law, but the legislative history suggests that Congress considered the common law of assignment when it amended the statute in 1991. The delinquent loan involved in the case that prompted enactment of the amendments had been assigned to the Secretary of Education by a named lender. *See Grider v. Cavazos*, 911 F.2d 1158, 1159 (5th Cir. 1990). And section 1091a contemplates that lenders may assign their delinquent accounts to the Secretary of Education for collection. 20 U.S.C. § 1091a(a)(2)(D) ("[N]o limitation shall terminate the period within which suit may be filed [by] ... the Secretary ... for the repayment of the amount due from a borrower ... that has been assigned to the Secretary under this subchapter.").

Application of section 1091a to assignees of named lenders is consistent with the stated purpose of the 1991 amendments, to "ensure that obligations to repay loans and grant overpayments are enforced without regard to any Federal or State statutory, regulatory, or administrative limitation on the period within which debts may be enforced." 20 U.S.C. § 1091a(a)(1). The use of the passive voice in this preamble—"are enforced" and "may be enforced"—emphasizes debt collection without naming an actor. This construction suggests a congressional intent to apply the statute not just to the Secretary of Education but to all lenders that need to enforce student-loan debts. *See Johnson v. United States*, 529 U.S. 694, 710 n. 10, 120 S.Ct. 1795, 1805 n. 10, 146 L.Ed.2d 727 (2000) (noting that the aim of statutory interpretation should be to effect congressional purpose). The commentary and debate surrounding the passage of the 1991 amendments focused primarily on expanding the federal government's ability to collect on defaulted student loans. *See* Roper, *supra* at 52. Extending the statutory protection to assignees of named lenders furthers that goal by making federally guaranteed student loans more marketable, thereby easing the government's collection burden.

We are also guided by how courts have applied other federal-loan statutes. The majority of courts hold that assignees are entitled to the benefit of the federal statute of limitations when they acquire loans made under federal programs administered by the Federal Deposit Insurance Corporation, the Federal Savings and

Loan Insurance Corporation, and the Small Business Administration. As the Third Circuit stated:

Doctrinally, an assignee stood in the shoes of the assignor at common law, and the Uniform Commercial Code provides that "[t]ransfer of an instrument . . . vests in the transferee any right of the transferor to enforce the instrument." UCC § 3–203(b). Moreover, the Restatement (Second) of Contracts § 336 cmt. b, ex. 3 explains that "A lends money to B and assigns his right to C. C's right is barred by the Statute of Limitations when A's right would have been." We see no reason that the inverse should not hold as well. In public policy terms, affording assignees of the United States the same rights as the United States is desirable because it improves the marketability of instruments held by the United States, thereby giving the United States greater flexibility in monetizing its claims.

*UMLIC VP LLC v. Matthias,* 364 F.3d 125, 132 (3d Cir.2004).

A contrary approach is summarized in *WAMCO, III, Ltd. v. First Piedmont Mortgage Corp.,* 856 F.Supp. 1076 (E.D.Va.1994). There the court determined, with regard to the Financial Institutions Reform Recovery and Enforcement Act (FIRREA), that the federal statute of limitations was a personal right granted only to the Resolution Trust Corporation (RTC). 856 F.Supp. at 1086. The relevant part of the FIRREA states: "[T]he applicable statute of limitations, with regard to any action brought by the [RTC] *as conservator or receiver* shall be . . . the longer of . . . (I) the 6–year period beginning on the date the claim accrues; or (II) the period applicable under state law." *Id.* at 1083 (quoting 12 U.S.C. § 1821(d)(14)(A)) (emphasis added). The *WAMCO* court declined to follow the ma-

jority approach to assignments, concluding that the federal statute of limitations is a personal benefit tied to the RTC's status as a receiver under the FIRREA and not transferrable by assignment. *Id.* at 1086.

We find the majority approach more apposite and persuasive. First, this case, unlike *WAMCO,* does not involve assignment by a conservator or receiver; Mountain Peaks obtained a contractual right to recover money. Second, the *WAMCO* court's approach is at odds with the common law. As the Supreme Court of Texas explained when declining to adopt the *WAMCO* court's analysis, "rights personal to the assignor are those which, although relating to the property assigned, constitute accrued causes of action that may be asserted independently of ownership of the property." *Jackson v. Thweatt,* 883 S.W.2d 171, 176 (Tex.1994). The *Jackson* court reasoned that because a statute of limitations "confers no benefit independent of the asset to which it relates," it is not a personal right. *Id.*

Section 1091a does not grant the named lenders any "personal" rights or status. Rather, section 1091a exempts them from the operation of statutes that would otherwise impact the manner in which the assigned loan could be collected. Because Congress legislated with a full knowledge of the common law of assignment, all contractual rights of the named lenders, including the protection from state statutes of limitations, should transfer to their assignees. This interpretation of section 1091a both preserves the common law and furthers the stated purpose of the statute. *See* Roper, *supra* at 66–78 (containing an extended discussion of similar cases and policy).

We conclude that section 1091a of the Higher Education Act applies to assignees of named lenders. Mountain Peaks is an assignee of a named lender, therefore this

action is not time-barred by any Minnesota statute of limitations.

## II.

■ Because Mountain Peaks' action is not time-barred, we turn to Roth–Steffen's alternative argument that the district court erred in granting summary judgment because genuine issues of material fact remain for trial. A genuine issue of material fact exists "when reasonable persons might draw different conclusions from the evidence presented." *DLH Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn.1997).

■ Affidavits supporting and opposing summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Minn. R. Civ. P. 56.05. To defeat a properly supported motion for summary judgment, a nonmoving party must offer significant probative evidence; "discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion." *Carlisle v. City of Minneapolis*, 437 N.W.2d 712, 715 (Minn. App.1989).

Roth–Steffen argues that certain documents Mountain Peaks submitted to establish her debt are inadmissible hearsay and thus cannot support summary judgment. She challenges the admissibility of loan applications and promissory notes on the ground that the affiant, a Mountain Peaks representative, was not "a custodian or other qualified witness" as required by Minn. R. Evid. 803(6). The challenged documents were created by MOHELA, and Mountain Peaks did not obtain affidavits from MOHELA representatives to provide the requisite foundation for their admission. But we need not address this argument because other competent evidence supports the district court's grant of

summary judgment in favor of Mountain Peaks.

■ Mountain Peaks sued Roth–Steffen under the theories of account stated and unjust enrichment. An account stated is "a manifestation of assent by a debtor and creditor to a stated sum as an accurate computation of an amount due the creditor." *Cherne Contracting Corp. v. Wausau Ins. Cos.*, 572 N.W.2d 339, 345 (Minn.App.1997), *review denied* (Minn. Feb. 19, 1998) (quotation omitted). To establish and recover on an account stated, the claimant must show (1) a prior relationship as debtor and creditor, (2) a showing of mutual assent between the parties as to the correct balance of the account, and (3) a promise by the debtor to pay the balance of the account. 1 Am. Jur. 2d *Accounts and Accounting* § 26 (2004).

■ The documents showing the assignment of the MOHELA loan from MOHELA to GNIC, and from GNIC to Mountain Peaks were submitted with an affidavit of a Mountain Peaks agent who has knowledge of Mountain Peaks' business-records retention policies and are therefore admissible under Minn. R. Evid. 803(6). The assignment documents establish that Mountain Peaks and Roth–Steffen have a debtor-creditor relationship. The loan consolidation application Roth–Steffen submitted in December 1998 sets out the MOHELA loan balance and establishes, through an attached loan repayment schedule, the terms of the MOHELA loan. These documents, which Roth–Steffen produced during discovery and does not challenge on evidentiary grounds, confirm Mountain Peaks' assertion with respect to the loan balance and establish Roth–Steffen's promise to pay. We conclude that the assignment and loan consolidation documents are competent, admissi-

ble evidence that support judgment in Mountain Peaks' favor.

Roth–Steffen's arguments that genuine fact issues preclude summary judgment also fail. Her assertion that the acknowledged error with respect to the originator of the MOHELA loan contained in Mountain Peaks' initial complaint and affidavit creates a fact issue is unavailing. Mountain Peaks admitted and corrected the errors in both its pleading and the affidavit supporting summary judgment. The loan assignment history is not disputed. On this record, the discrepancy between the affidavits does not create a genuine issue of material fact.

■ Roth–Steffen's reliance on her own affidavit to create a fact issue for trial is also misplaced. Although she avers that she did not take out the MOHELA loan, self-serving affidavits that contradict other testimony generally are not sufficient to create a fact issue for trial. *Faegre & Benson, LLP v. R & R Investors*, 772 N.W.2d 846, 856 (Minn.App.2009).[1]

### DECISION

Because Mountain Peaks is an assignee of a lender named in 20 U.S.C. § 1091a, this action is not subject to Minnesota statutes of limitation. And on this record, we conclude that admissible, undisputed evidence supports summary judgment in favor of Mountain Peaks.

**Affirmed.**

---

1. Because we affirm the grant of summary judgment on the account-stated claim, we do not reach the unjust-enrichment claim. But we note that a party is not entitled to equitable relief where an adequate legal remedy is available. *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 305 (Minn. 1996).