*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2194**

Kay Tellinghuisen,
Appellant,

vs.

Chrysler Group, LLC, a foreign limited liability company
transacting business in the State of Minnesota,
Respondent.

**Filed September 2, 2014
Affirmed
Smith, Judge**

Hennepin County District Court
File No. 27-CV-12-20083

Todd E. Gadtke, Daniel J. Brennan, Gadtke Law Firm, P.A., Maple Grove, Minnesota (for appellant)

Julian C. Janes, Gislason, Martin, Varpness & Janes, P.A., Edina, Minnesota (for respondent)

     Considered and decided by Bjorkman, Presiding Judge; Smith, Judge; and Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SMITH**, Judge

We affirm the district court's summary judgment dismissal of appellant's claim for breach of the implied warranty of merchantability arising from an allegedly defective braking system because the vehicle was merchantable as a matter of law.

## FACTS

In May 2009, appellant Kay Tellinghuisen purchased a 2009 Dodge Journey manufactured by respondent Chrysler Group, LLC. On June 29, 2010, when the vehicle had been driven approximately 30,704 miles, the Journey's front brake pads and rotors were replaced.

In 2010, Chrysler "became aware that the front brake pad lining life on some 2009 Dodge Journey vehicles was not meeting customer expectations." In response, Chrysler extended the express limited warranty for repair and replacement of brake pad linings and brake rotors from 12 months/12,000 miles to 36 months/36,000 miles, with certain deductibles. In a letter dated June 1, 2011, Chrysler advised customers, including Tellinghuisen, that it was "extending the warranty period on your front braking components because some vehicles may need pads and rotors replaced earlier than expected." Tellinghuisen submitted a claim for reimbursement for the June 2010 replacement of her brake pads and rotors and received full reimbursement, less a $100 deductible.

Although she has provided documentation for only the 30,000-mile replacement, Tellinghuisen claims that the brake pads and rotors were replaced a second and third time

at unspecified times when the vehicle had approximately 50,000 and 80,000 miles on it. On May 1, 2013, when the vehicle had approximately 80,000 miles, Tellinghuisen had the Journey inspected by licensed automobile mechanic Steve Rozell, who concluded that the front brake pads and rotors are undersized for the weight of the vehicle, that Tellinghuisen would continue to have to replace them at what he deemed to be premature intervals, and thus that the "vehicle was delivered to [Tellinghuisen] in a defective state."

Tellinghuisen retained counsel and, by letter dated April 16, 2012, notified Chrysler of breaches of the express warranty and the implied warranty of merchantability with respect to the Journey. Chrysler did not respond to the letter, and Tellinghuisen commenced this action on May 11, 2012, asserting claims for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d); breach of express warranty; and breach of the implied warranty of merchantability.

Chrysler moved for summary judgment. Tellinghuisen opposed the motion, except with respect to her express-warranty claim, which she voluntarily dismissed with prejudice. Following a hearing, the district court granted Chrysler's motion, concluding that the Journey was merchantable as a matter of law and that Tellinghuisen did not give timely notice of the alleged breach. The parties agreed that the Magnuson-Moss-Warranty-Act claim was contingent on a viable breach-of-the-implied-warranty-of-merchantability claim. The district court ordered judgment dismissing the complaint, and judgment was entered on September 25, 2013.

## D E C I S I O N

On appeal from the summary judgment dismissal of claims, we conduct a de novo review to determine whether (1) there exist any genuine issues of material fact, and (2) judgment is appropriate as a matter of law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002). We view the evidence in the light most favorable to the nonmoving party. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). But a party may not avoid summary judgment by resting on mere averments or presenting evidence that "merely creates a metaphysical doubt as to a factual issue." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997). "[W]hen determining whether a genuine issue of material fact for trial exists, the court is not required to ignore its conclusion that a particular piece of evidence may have no probative value, such that reasonable persons could not draw different conclusions from the evidence presented." *Id.* at 70. Summary judgment is mandatory against a party who fails to establish an essential element of his or her claim, if that party has the burden of proof, because this failure renders all other facts immaterial. *Carlisle v. City of Minneapolis*, 437 N.W.2d 712, 715 (Minn. App. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53 (1986)).

"To establish a warranty claim the plaintiff must basically prove: the existence of a warranty, a breach, and a causal link between the breach and the alleged harm." *Peterson v. Bendix Home Sys., Inc.*, 318 N.W.2d 50, 52-53 (Minn. 1982). Under the Minnesota Uniform Commercial Code, "a warranty that the goods shall be merchantable

4

is [generally] implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Minn. Stat. § 336.2-314(1) (2012). To be merchantable, goods

> must be at least such as
> (a) pass without objection in the trade under the contract description; and
> (b) in the case of fungible goods, are of fair average quality within the description; and
> (c) are fit for the ordinary purposes for which such goods are used; and
> (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
> (e) are adequately contained, packaged, and labeled as the agreement may require; and
> (f) conform to the promises or affirmations of fact made on the container or label if any.

Minn. Stat. § 336.2-314(2) (2012). In order to recover on a warranty theory, "the buyer must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of breach." Minn. Stat. § 336.2-607(3)(a) (2012).

The district court concluded that Tellinghuisen is precluded from recovering under an implied-warranty theory both because the Journey was merchantable as a matter of law and because she did not give timely notice of the alleged breach as a matter of law. We agree with the district court that the Journey was merchantable as a matter of law, and thus we do not reach the notice issue.

Although the Minnesota caselaw addressing implied-warranty claims based on vehicle sales does not state a clear definition of merchantability in that context, courts in other jurisdictions have held that a vehicle is merchantable if it provides safe, reliable transportation. *See, e.g.*, *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 623

5

(M.D. N.C. 2006) (citing *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297-98 (4th Cir. 1989); *In re Air Bag Prods. Liab. Litig.*, 7 F. Supp. 2d 792, 803 (E.D. La. 1998); *Taterka v. Ford Motor Co.*, 271 N.W.2d 653, 655 (Wis. 1978)). "The implied warranty of merchantability does not 'impose a general requirement that goods precisely fulfill the expectations of the buyer. Instead, it provides for a minimum level of quality.'" *Id.* (quoting *Skelton v. Gen. Motors Corp.*, 500 F. Supp. 1181, 1191 (N.D. Ill. 1980), *rev'd on other grounds*, 660 F.2d 311 (7th Cir. 1981)). In applying the safe-and-reliable-transportation standard for merchantability, courts have considered both the length of time that a vehicle was driven without incident and the severity of the issues that ultimately arose. As a federal district court explained in *Sheris v. Nissan N. Am. Inc.*, "[t]he weight of authority, from courts across the county, indicates that plaintiffs may not recover for breach of the implied warranty of merchantability under the facts where plaintiffs have driven their cars without problems for years." Civ. No. 07-2516 (WHW), 2008 WL 2354908, at *6 (D.N.J. June 3, 2008) (quotation omitted).

*Sheris* involved facts strikingly similar to this case, and the district court relied on *Sheris* in concluding that Tellinghuisen's Journey was merchantable as a matter of law. The plaintiff in *Sheris* alleged defective rotor/caliper front brake assembly, based on needing his brake pads and rotors replaced after 20 months and 20,618 miles. *Id.* at *1-2. The court held this insufficient to demonstrate that the vehicle was unmerchantable. *Id.* at *5.

Two additional foreign cases inform our analysis. In *Bussian*, the plaintiff alleged that the breach of the implied warranty of merchantability was based on premature

6

wearing of the ball joints in his vehicle, contending that the premature wear was due to a defect in the ball joints' construction and that "ball joints are designed to, and ordinarily do, function for periods of time and mileages substantially in excess of those specified in DaimlerChrysler's warranties." 411 F. Supp. 2d at 617-18. The district court dismissed the implied-warranty claim, explaining:

> Between the time that Plaintiff purchased his Durango *used* in May 2001, and the unspecified time in 2003 when he replaced his ball joints, Plaintiff makes no allegation that the allegedly defective ball joints caused him to suffer mechanical problems, lose control of his vehicle, or have an accident. Plaintiff does not allege that his Durango was ever rendered inoperable by the defective ball joints. Plaintiff makes no allegation that he lost faith in his Durango or stopped driving his Durango after he learned of his ball joint problem. Thus with the exception of a single repair five years after original manufacture, Plaintiff's complaint makes out no allegations that his Durango was not fit for the purposes for which it was intended, i.e., to provide safe and reliable transportation.

*Id.* at 623-24.

In *Ford Motor Co. v. Fairley*, a plaintiff alleged breach of the implied warranty of merchantability based on problems with "piston scuffing" in his vehicle. 398 So.2d 216, 217-18 (Miss. 1981). Notably, as in this case, the manufacturer had acknowledged the problem and extended the warranty over affected parts. *Id.* But plaintiff had experienced no problem with the vehicle for more than two years and 26,649 miles, and the Mississippi Supreme Court concluded that "[s]uch service as a matter of law negates a breach of an implied warranty of merchantability of this car." *Id.* at 219.

The cases allowing claims under an implied-warranty theory generally implicate either defects, including minor defects that manifest early on, or catastrophic defects that

7

manifest within the reasonably expected life of the vehicle. In *Nelson v. Wilkins Dodge, Inc.*, a case on which Tellinghuisen relies, multiple defects manifested within the first six months and 12,000 miles of ownership. 256 N.W.2d 472, 473-74 (Minn. 1977).[1] The court reversed a directed verdict and remanded the claim for a new trial, reasoning that "[i]t is reasonable to suppose . . . that vehicles that are fit for ordinary purposes probably do not display these defects this early, even if they are driven a great deal within a short period of time." *Nelson*, 256 N.W.2d at 476. In *Daigle v. Ford Motor Co.*, the Minnesota federal district court allowed an implied-warranty claim based on alleged defects in torque converters that caused the "splines" connecting their engines and transmissions to strip, leading to transmission failure. 713 F. Supp. 2d 822, 824-27 (D. Minn. 2010). The manufacturer in that case argued that "the claim should be dismissed because all cars are built with components that break down over time." *Id.* at 826. The court rejected that argument, explaining that, "[a]rguably, a vehicle that suffers a major,

---

[1] Tellinghuisen relies on two other Minnesota cases, both of which are inapposite. In *Pfeiffer v. Ford Motor Co.*, we concluded that the district court erred by denying appellants' motion to amend their complaint to state a claim for "breach of implied warranty and fitness for a particular purpose under the UCC." 517 N.W.2d 76, 80 (Minn. App. 1994), *review denied* (Minn. Aug. 11, 1994). The case arose out of allegations that the dealer knew of appellants' need for a particular level of horsepower, and it is not clear that appellants even attempted to plead a claim based on merchantability. In *Graffunder v. Toyota Motor Sales U.S.A., Inc.*, we held that evidence of a noise coming from near the brake pedal was sufficient to support a claim under Minnesota's lemon law, Minn. Stat. § 325F.665 (2006). No. A09-563, 2010 WL 274203, at *7 (Minn. App. Jan. 26, 2010). In a footnote, we noted that the claims might also be pursued under an implied-warranty theory. *Id.* at *7 n.2. The footnote is dicta in an unpublished opinion. *See* Minn. Stat. § 480A.08, subd. 3 (2012) (providing that unpublished decisions are not precedential); *Wandersee v. Brellenthin Chevrolet Co.*, 258 Minn. 19, 28, 102 N.W.2d 514, 520 (1960) (noting that dicta is not binding). Moreover, because the defect in *Graffunder* manifested itself within one day of ownership, allowing pursuit of an implied-warranty theory would not be inconsistent with the caselaw.

systemic malfunction within five years of purchase—even with rigorous driving—may not be 'fit' within the meaning of the implied warranty statute." *Id.*

We conclude that the district court did not err by determining that Tellinghuisen's Journey was merchantable as a matter of law. The defect that Tellinghuisen alleges is distinguishable from those that the courts have found to support implied-warranty claims. As the district court emphasized, Tellinghuisen drove the car for nearly 31,000 miles over the course of more than a year before the alleged defect first manifested itself. Thus, this case is distinguishable from *Nelson* and other cases in which the defects, although arguably minor, manifested themselves early in ownership. Moreover, the defect did not cause a catastrophic event like the transmission failure experienced in *Daigle*. Instead, the defect causes symptoms—shaking in the steering wheel, a "droning" sound, and heat in the front braking area—that have prompted Tellinghuisen to get her brakes repaired. Accordingly, we conclude that the district court did not err by dismissing Tellinghuisen's implied warranty claim.

**Affirmed.**