**Gloria Kay BENSON, Respondent,**

v.

**Walter LaBATTE, Jr., Appellant.**

**No. 48149.**

Supreme Court of Minnesota.

Dec. 7, 1979.

John C. Goetz, Hennepin County Legal Advice Clinics, James J. Schwebel & Assoc., Minneapolis, for appellant.

William B. Randall, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

KELLY, Justice.

In this paternity action brought pursuant to Minn.Stat. §§ 257.251 to 257.31 (1978) the trial court determined that defendant-appellant was the father of plaintiff's child. Although defendant challenges the sufficiency of the evidence, after review of the record and in particular of the conflicting testimony of the parties, we agree with the trial court's conclusion that the evidence was sufficiently clear and convincing to support the determination of paternity.

The parties were introduced to each other in November or December 1973 by defendant's sister shortly after plaintiff, a 23-year-old single woman, came to live in Granite Falls, Minnesota. Plaintiff testified that she had a date with defendant the following weekend and almost every weekend thereafter until about April 1974 and that they had sexual relations during these times. She said also that because of a work injury she missed work for 2 weeks in February, during which time defendant spent every night at her home. Her child was born December 2, 1974, and the doctor who cared for her estimated that the date of conception was February 20, 1974.

Plaintiff also testified that when she told defendant in March 1974 that she thought she was pregnant he advised her to obtain an abortion, which she refused to do; that they argued about this for several weeks; and that he later suggested marriage, which she refused, and also suggested that she live with him at his parents' home. She said that she had not dated nor had sexual relations with anyone except defendant between January and December 1974. Plaintiff admitted that when she applied for welfare after taking leave from her job she had told a welfare department worker that the father was Roy Thompson of Dallas, Texas, and that she had signed a sworn application for welfare and an eligibility review form which so stated. She said the name was fictitious and she had made it up because after arguing with defendant about abortion she did not want any more to do with him and felt she could take care of her child herself. She denied that a man from Texas had visited her in February or March 1974. She also testified that defendant's sister came to the hospital at the time of the child's birth and suggested to plaintiff that she give the child defendant's surname.

Defendant admitted that he had had relations with plaintiff once late in December 1973 and once 2 weeks later. He denied doing so at any other time and testified that plaintiff had never told him he was the father of her child before commencement of the paternity proceeding in June 1976. He admitted having had drinks with plaintiff at the municipal liquor store lounge in January and February 1974. He also introduced an attendance record from her employer showing that she had missed time from work in March rather than in February, and he attempted to introduce evidence that she had lived with a man in Dallas

before coming to Minnesota. Objection to this evidence was sustained.

Two other witnesses testified. Vivian Iron Heart, who had known defendant all his life but became personally acquainted with plaintiff after the birth of her child, testified that she had seen plaintiff and defendant together at the liquor store lounge in December 1973 and during the winter of 1974. She had not seen defendant in the company of any other woman during that time. Juanita Crows Breast, defendant's sister, denied seeing plaintiff and defendant together during that time and denied that plaintiff told her defendant was the child's father. She said that she had visited plaintiff and her mother several times a week during 1974 and that she had stayed at the hospital with plaintiff when the child was born.

The record thus reveals that the testimony of the parties is in sharp conflict. Defendant in challenging the sufficiency of the evidence cites *State v. Engstrom,* 226 Minn. 301, 304, 32 N.W.2d 553, 555 (1948), where this court said: " * * * A conviction may be had on the uncorroborated testimony of the complainant. But every conviction had on the uncorroborated testimony of the mother should not be permitted to stand. The testimony of the mother must be sufficiently clear and convincing." He also adverts to *Weber v. Anderson,* 269 N.W.2d 892, 895 (Minn.1978), in which we again said that paternity may be proved only by clear and convincing evidence, which we defined as requiring "more than a preponderance of the evidence but less that proof beyond a reasonable doubt." Defendant insists that plaintiff's testimony was so inconsistent and so impeached that is was not clear and convincing. He points to her testimony concerning the work injury and the fact that she named another person as the father of her child on the welfare forms.

Plaintiff admitted that she might have been confused as to the time of the work injury and her absence from work, which the attendance records show occurred in March rather than February. If her testimony that she had intercourse with defendant just about every weekend from December 1973 through March 1974 is credited, however, exactly when the work injury occurred is not particularly significant.

▮ We have some concern about the credibility of testimony completely contradicted by the witness' prior sworn statements that the father of her child was a man from another state, but her testimony that she gave a fictitious name on the welfare forms and her explanation of why she did so was consistent and cannot be diluted as inherently improbable. There was no testimony that plaintiff was otherwise promiscuous.

As the trial court observed, the issue is one of credibility. He was in a position to observe the parties' demeanor and expressed his assessment in the memorandum made a part of the order denying defendant's post-trial motion for amended findings and judgment: " * * * The testimony of the plaintiff, notwithstanding certain admitted inconsistencies, seems to the court to be candid, sincere and truthful; in contrast, defendant's testimony did not impress the court as being consistent or forthright."

▮ Accepting this assessment, we are required to agree that plaintiff's testimony, together with the evidence corroborative of it, was sufficiently clear and convincing to support the determination that defendant is the father of plaintiff's child. We again express our belief, however, that blood-test procedures provide the most accurate and efficient means of determining paternity, and we recommend that in the interests of justice the county attorneys of the state encourage their use in proceedings of this nature. *See, State, on Behalf of Ortloff v. Hanson,* 277 N.W.2d 205 (Minn.1979) and *Hepfel v. Bashaw,* 279 N.W.2d 341 (Minn. 1979), where we urged the legislature to provide for the availability and use in paternity actions of the blood-grouping tests currently available.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.