Tammy WEIHE and Faribault-Martin-Watonwan Human Services Board, Respondents,

v.

Brady T. HENDLEY, Appellant.

No. C8–86–34.

Court of Appeals of Minnesota.

July 1, 1986.

D. Gerald Wilhelm, Martin Co. Atty., Fairmont, for respondents.

Paul C. Edman, Fairmont, for appellant.

Considered and decided by FORSBERG, P.J., and SEDGWICK and RANDALL, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

The trial court granted summary judgment determining that appellant Brady Hendley was the father of respondent Tammy Weihe's child and setting child support at $53 per month. Hendley contends the trial court erred in granting summary judgment and erred in ordering child support based solely on AFDC benefits he receives

for his four other children. We reverse and remand for trial.

## FACTS

Tammy Weihe gave birth to A.J.W. on January 17, 1984. Weihe and respondent Faribault-Martin-Watonwan Human Services Board (Board) filed this paternity action against appellant requesting an adjudication of paternity, a judgment of $4,678 for costs of "birth and confinement" incurred by the Board, and "reasonable" child support. Appellant never filed an answer denying the allegations of the complaint.

On January 23, 1985 respondents filed and served a motion for summary judgment:

> on the ground that [appellant's] Answers to [respondent's] Interrogatories and [appellant's] answers given during his Deposition on January 3, 1985, leave no material issues of fact in dispute, thereby entitling [respondents] to Summary Judgment as a matter of law.

Attached to the motion were an affidavit of D. Gerald Wilhelm, attorney for respondents, and a letter from Dr. H.F. Polesky, director of the Minneapolis War Memorial Blood Bank. Each summarized the results of blood tests conducted on appellant, respondent, and A.J.W. The tests showed a "paternity index" of 1027.21 and a corresponding likelihood of 99.903 percent that appellant could be the father of A.J.W.; some 1027 randomly selected males would have to be tested before one was found with sufficient genetic characteristics to be the father of A.J.W.

Attorney Wilhelm's affidavit also discussed testimony given by Weihe and appellant at their depositions and appellant's answers to interrogatories. The interrogatories and answers were never filed with the trial court and were not attached to the summary judgment motion. The depositions were filed. Appellant did not submit affidavits.

Respondents' motion for summary judgment was heard and granted on the issue of paternity, but the issues of custody and support were reserved pending a recommendation by the Board. Temporary custody was awarded to respondent Weihe.

Respondents subsequently moved to amend the judgment and set appellant's child support obligation at $53 per month. The motion was supported by the affidavit of Kathleen DeNeui, Collections Supervisor for the Board, who recommended the $53 support figure.

Appellant is married, has three children of his present marriage, and custody of one child of a previous marriage. His sole income is $758 in AFDC payments he receives for those four children. DeNeui explained her recommendation:

> I applied the $758 directly for five children which was 35 percent of his income or $265.30 per month for five children. I divided that figure by five and arrived at $53 per month child support for each child.

An amended judgment filed October 25, 1985 awarded custody of A.J.W. to Weihe and ordered appellant to pay $53 per month in child support.

## ISSUES

1. Did the trial court err in granting summary judgment on the issue of paternity?

2. Did the trial court err in ordering payment of child support where the obligor's only income was AFDC benefits?

## ANALYSIS

### I.

Paternity actions are governed by the Rules of Civil Procedure. Minn.Stat. § 257.65 (1984). Under those rules, summary judgment "shall be rendered forthwith" if:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law.

Minn.R.Civ.P. 56.03. Summary judgment is not designed as a substitute for trial where there are factual issues to be determined. *Vieths v. Thorp Finance Co.*, 305 Minn. 522, 525, 232 N.W.2d 776, 778 (1975) (citations omitted).

■ The ultimate issue in this case was whether appellant was the father of A.J.W. Relevant evidence of paternity includes evidence of sexual intercourse between the mother and alleged father at any possible time of conception and the results of blood testing. *See* Minn.Stat. § 257.63, subd. 1(a) and (c) (1984). Blood testing is generally the most reliable proof of paternity. *See Wessels v. Swanson*, 289 N.W.2d 469, 470 (Minn.1979).

In the recent case of *Itasca County Social Services v. Milatovich*, 381 N.W.2d 497 (Minn.Ct.App.1986) (summary opinion), this court reversed a summary judgment of paternity because the affidavit of a Child Support Officer regarding blood test results was not made on "personal knowledge." *Id.* at 498–99; *see* Minn.R.Civ.P. 56.05. In *Milatovich* the blood test report had been filed with the trial court; even so, this court determined the report was "not in evidence." *Id.* at 498. The court stated:

> Without the blood test report, an issue of material fact existed, namely, which of the two men with whom [the mother] had sexual intercourse was the father. The trial court erred by granting summary judgment.

*Id.*

■ Here respondents' attorney submitted his own affidavit relating the results of blood testing and summarizing appellant's answers to interrogatories. The blood test results were not in affidavit form and neither the test results nor the answers were ever filed with the trial court. *See* Minn.R.Civ.P. 56.03 (summary judgment must be based upon documents "on file").

The attorney's affidavit was not made on personal knowledge as required by Minn.R. Civ.P. 56.05. Under *Milatovich*, neither the blood test results nor appellant's answers to interrogatories were properly be-

fore the trial court when it granted summary judgment. *See* 381 N.W.2d at 498. The only evidence of paternity filed with the trial court was the depositions of the parties.

■ Appellant never filed an answer and has never denied on the record that he is the father of A.J.W.; a default judgment would have been the proper procedure in this case. *See* Minn.R.Civ.P. 55.01. Then evidence such as the blood test and answers to interrogatories can properly be submitted.

## II.

■ Appellant questions whether he can be ordered to pay child support when his sole income is AFDC benefits he receives for four other children.

In *Lee v. Ystebo*, 353 N.W.2d 264 (Minn. Ct.App.1984), the obligor earned $403 per month as a musician and received $325 in AFDC payments for two children; $35 in food stamps; $150 in "child care benefits;" $143 for an educational grant; and a $100 rent reduction benefit. *Id.* at 265. This court stated that "special purpose benefits (day care, additional grants, reduced rent, AFDC, and food stamps) are not income." Id. at 265–66. The *Lee* court affirmed the trial court's support order only because the obligor had "significant earnings" and welfare payments were not his sole source of income. *Id.* at 266.

Taking benefits which were designed to provide minimal sustenance for four children and reallocating them to support five children is repugnant to the public policies behind the AFDC program and is just plain senseless.

The support order lacks foundation because the court did not consider the factors in Minn.Stat. § 518.17, subd. 4 (1984). There are no findings as required by *Moylan v. Moylan*, 384 N.W.2d 859 (Minn. 1986).

## DECISION

The award of summary judgment is reversed and the case remanded for trial. A

child support award cannot be based solely on AFDC benefits because they are not "income."

Reversed and remanded.