Susan Elizabeth JOHNSON and Ramsey County, Respondents,

v.

Dale Norman VAN BLARICOM, Appellant.

No. C6–91–1326.

Court of Appeals of Minnesota.

Jan. 28, 1992.

Thomas M. Brudvig, Roseville, for appellant.

Tom Foley, Ramsey County Atty., Ronelle Anderson, Brad Johnson, Asst. County Attys., St. Paul, for respondents.

Considered and decided by PARKER, P.J., and KALITOWSKI and FLEMING *, JJ., concur.

## OPINION

KALITOWSKI, Judge.

Appellant Dale Van Blaricom challenges the district court's grant of summary judgment for respondents, arguing that genuine issues of material fact exist. We affirm.

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment

## FACTS

Respondent Susan Johnson gave birth to T.D.J. on February 8, 1988. In March of 1988, Johnson and co-respondent Ramsey County initiated a paternity action against appellant. Respondents served appellant with a complaint and a motion to require blood testing.

Respondents eventually made a motion for summary judgment. In support of their motion, they submitted Susan Johnson's affidavit, the affidavit of Dr. Herbert Polesky, the doctor who supervised the blood testing, and the affidavit of Theresa McMahon, a legal secretary in the Ramsey County attorney's office. They also submitted a copy of appellant's response to respondents' request for admissions.

Johnson stated in her affidavit that she had sexual intercourse with appellant on three separate occasions in May of 1987 and once in June of 1987. Johnson also stated that she had intercourse with another man in early April of 1987. Blood tests excluded this man as the father.

Dr. Polesky's affidavit stated that he had supervised the blood testing performed on the parties and the child. He indicated that the tests showed a "paternity index" of 711.7, meaning that it is 711.7 times more likely that appellant is the father of Johnson's child than an untested random male. Dr. Polesky further stated that this index, when converted into a percentage, indicates a 99.86% likelihood that appellant is the father.

In his response to respondents' request for admissions, appellant admitted that he had sexual intercourse with Johnson in May and June of 1987. Appellant further admitted that he and Johnson did not use any contraceptive devices. He also stated that he was not sterile, impotent or incapable of intercourse during this time.

Appellant submitted an affidavit in which he admitted having intercourse with Johnson in May and June but denied he was the father of Johnson's child. He also asserted in the affidavit that based upon informa-

pursuant to Minn. Const. art. VI, § 2.

tion and belief, Johnson had intercourse with at least one other individual during April, May and June of 1987.

The district court held a hearing on the summary judgment motion and subsequently denied the motion. In a memorandum accompanying its order, the court noted that no information relating to the gestation period of the child had been provided. The court reasoned that due to the lack of evidence on gestation, it could not exclude the possibility that conception occurred after June of 1987, the last time appellant and Johnson had intercourse.

Respondents subsequently amended their motion to include the affidavit of Dr. Thomas Grande. Dr. Grande's affidavit indicated that he was present when Johnson's child was born and had reviewed Johnson's medical records. Dr. Grande asserted that based on his review of the records, presence at the birth, and his training and experience, he believed Johnson's child was a full-term child.

Appellant submitted a memorandum and portions of Johnson's deposition testimony in opposition to the summary judgment motion. He also attached T.D.J.'s birth certificate which does not identify the father and Dr. Polesky's letter explaining the blood test results. He further included his affidavit admitting intercourse with Johnson but denying that he was the father of Johnson's child.

Appellant also submitted the affidavit of his attorney. The affidavit set forth criticisms of paternity calculations and stated that an expert on blood testing and paternity calculations had agreed to testify for the defense regarding these criticisms.

The district court ultimately granted summary judgment for respondents. The court found that blood test results indicated a 99.86% likelihood that appellant was the father of Johnson's child. The court also found that Dr. Grande's affidavit indicated that T.D.J. was a full-term child and that appellant and Johnson had intercourse during the conception period. The court additionally found that Johnson's affidavit established that she had intercourse with appellant and another man during the

relevant period but blood tests had excluded the other man as a potential father. The court concluded that no genuine issues of fact remained and adjudicated appellant the father of T.D.J.

## ISSUE

Did the trial court err in granting summary judgment for respondents on the issue of paternity?

## ANALYSIS

■■■ A paternity action is a civil action governed by the rules of civil procedure. Minn.Stat. § 257.65 (1986); *Weihe v. Hendley*, 389 N.W.2d 754, 755 (Minn.App.1986). Summary judgment therefore is permissible in a paternity action. *See Weihe*, 389 N.W.2d at 755–56. On appeal from a summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court erred in applying the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

■■■ Appellant argues that his denial of paternity creates a genuine issue of material fact. We disagree. In order to successfully oppose a summary judgment motion, a party cannot rely upon mere denials or general assertions but must demonstrate that specific facts exist which create a genuine issue for trial. *See* Minn. R.Civ.P. 56.05; *Hunt v. IBM Mid Am. Employees Fed. Credit Union*, 384 N.W.2d 853, 855 (Minn.1986). Appellant's denial of paternity in itself is not sufficient to defeat respondents' summary judgment motion.

■■■ Appellant asserts that his allegation that Johnson had sexual intercourse with other men during the conception period creates a genuine issue for trial. Appellant's only support for his allegation, however, rests in speculation and innuendo concerning Johnson's alleged lifestyle and past sexual behavior. A party cannot rely upon speculation to demonstrate the existence of a genuine fact issue. *Fownes v. Hubbard Broadcasting, Inc.*, 302 Minn. 471, 474, 225 N.W.2d 534, 536 (1975). In addition, a party opposing summary judgment must do

more than show that there is a metaphysical doubt as to material facts. *Carlisle v. City of Minneapolis,* 437 N.W.2d 712, 715 (Minn.App.1989). Appellant has presented no specific facts or evidence to support his allegations and therefore has failed to demonstrate that a genuine issue of fact exists.

Appellant also argues that blood testing is inconclusive and the reliability of blood testing is a fact issue for the jury. Appellant submitted the affidavit of his attorney, who stated that he planned to use an expert witness and the cross-examination of Dr. Polesky to demonstrate the fallacies of blood testing. The attorney's affidavit set forth a list of flawed assumptions surrounding blood test procedures. The affidavit did not specifically attack the procedures or results reached in this case.

Minnesota courts have observed that blood testing generally is the most accurate and reliable proof of paternity. *See Benson v. LaBatte,* 288 N.W.2d 684, 686 (Minn.1979); *Weihe,* 389 N.W.2d at 756. Further, since August 1, 1989, Minn. Stat. § 257.55, subd. 1(f) has provided for a presumption of paternity if the blood test shows a likelihood of paternity of over 99%.

The blood test results in this case showed a 99.86% likelihood that appellant is the father of Johnson's child. This result is highly persuasive evidence of paternity. This court has stated, however, that a blood test is only one factor to be considered. *State ex. rel. Pula v. Beehler,* 364 N.W.2d 860, 863 (Minn.App.1985), *pet. for rev. denied* (Minn. June 4, 1985).

Here the trial court did not rely solely upon the blood test results. The court found that Johnson had intercourse with only appellant and one other man during the conception period, and the other man had been excluded as a potential father. The court also specifically referred to evidence other than the blood test results, including Johnson's affidavit, Dr. Grande's affidavit and Dr. Polesky's affidavit stating that in his opinion appellant is the father of Johnson's child. All of this evidence tended to establish that appellant fathered Johnson's child.

Finally, appellant's general assertions regarding blood testing procedures are insufficient to create a genuine fact issue for trial. Blood testing has been deemed the most reliable proof of paternity. *See Benson,* 288 N.W.2d at 686. In addition, appellant's argument that factual issues will be developed through the cross-examination of Dr. Polesky is unpersuasive. A party may not create a fact issue by claiming that the critical facts will be developed through cross-examination at trial. *Borom v. City of St. Paul,* 289 Minn. 371, 374–75, 184 N.W.2d 595, 597 (1971). Accordingly, appellant's assertions regarding the fallacies of blood testing do not establish the existence of a genuine issue of material fact.

### DECISION

The district court did not err in granting summary judgment for respondents on the issue of paternity.

Affirmed.