Rebecca Lynn LIMBERG, petitioner, Respondent,

State of Arizona ex rel., petitioner, Respondent,

v.

Brian Bruce MITCHELL, Appellant.

No. A12–2315.

Court of Appeals of Minnesota.

July 15, 2013.

Michael O. Freeman, Hennepin County Attorney, Sandra G. Filardo, Assistant County Attorney, Minneapolis, MN, for respondent State of Arizona.

Rebecca Lynn Limberg, Mesa, AZ, pro se respondent.

Tifanne E.E. Wolter, St. Paul, MN, for appellant.

Considered and decided by CLEARY, Presiding Judge; HOOTEN, Judge; and HUSPENI, Judge.*

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

## OPINION

HOOTEN, Judge.

Appellant challenges the district court's order granting summary judgment and adjudicating him father of a minor child, arguing that the district court erred by applying the statutory clear and convincing standard as his burden of proof to rebut the presumption of paternity and by failing to consider evidence of other possible fathers not joined in the paternity action. We affirm.

## FACTS

Appellant Brian Bruce Mitchell challenges the district court's order and judgment adjudicating him father of a minor child born on August 6, 2008. In 2010, the state of Minnesota filed a uniform support petition on behalf of the state of Arizona seeking to establish paternity and child support, as well as an accompanying motion requesting adjudication of appellant as the minor child's father or requiring him to submit to genetic testing. In his answer, appellant denied the allegations in the state's petition and denied "having any sexual intercourse with [respondent] during any possible time that would result in the pregnancy of [respondent] and the birth of" the minor child. The state of Minnesota eventually filed a motion seeking adjudication of appellant as the child's father in light of the results of genetic testing indicating that there was a 99.99% likelihood that appellant was the father.

In response to the state's interrogatories, appellant admitted that he first met the minor child's mother, respondent Rebecca Lynn Limberg, in May or June 2006 at a wedding, and that they spoke on the telephone a few times and exchanged text

Minn. Const. art. VI, § 10.

messages. Appellant admitted that after the wedding, he saw respondent on two more occasions during the fall of 2007.

On the first occasion during early October, respondent came to appellant's home, arriving late at night. Appellant asserted that he was on anti-depressant medication at the time and that, "at certain times," the medication made him "completely disinterested in sex" and episodically impotent. He stated that he and respondent "talked for a time and eventually fell asleep in the same bed with our clothes on." He recalled that when he awoke, feeling more groggy than usual, he realized that respondent, with her hand on his genitals, was trying to sexually arouse him. He claimed that he asked her to stop because he was not interested in a physical relationship with respondent and was concerned about the effects of his anti-depressant.

Appellant then described a second contact with respondent during early November when he visited her new apartment late in the evening or early morning. Appellant asserted that he "discovered" that respondent was menstruating heavily, and she offered to perform oral sex. He claimed, however, that he was not responsive to the oral sex in that he was not able "to get totally erect or climax." He asserts that he has not seen her since that meeting. Respondent discovered that she was pregnant at the end of November 2007. She gave birth on August 6, 2008.

In response to an interrogatory asking whether he had ever had sexual intercourse with respondent, appellant asserted that he had "[n]o recollection of any intercourse with [respondent]." He further stated that he did "not recall ever ejaculating during contact with [respondent] or in her presence." When asked for the identity of anyone who knew he was having sex with respondent, he again stated that he had no recollection of having sexual intercourse with respondent. When asked if they ever used birth control during sexual intercourse, he asserted that he and respondent "never had intercourse." When asked if he claimed to be sterile, impotent, or unable to have sexual intercourse between September 2007 and January 2008, appellant explained that his anti-depressant medication gave him "periods of impotence after dosage." He knew of no other male who had or claimed to have had sexual intercourse with respondent and did not claim to be otherwise unavailable for sexual intercourse with respondent between September 2007 and January 2008. Appellant advanced similar explanations in an affidavit in which he contended that he "did not have sexual intercourse with [respondent]" and that he did "not recall having a sexual relationship with [respondent]."

In response to appellant's interrogatories, respondent claimed that she and appellant had sexual intercourse at appellant's residence in October 2007 and then again in November 2007, when appellant visited her apartment late in the evening. She specifically recalled that appellant climaxed and ejaculated while penetrating her, and also stated that they did not use any contraceptives. She claimed that she has never had sex with any other male aside from appellant.

After appellant obtained separate genetic testing, which again indicated a 99.99% likelihood that he was the father, the state filed a motion for summary judgment for adjudication of parentage and child support. In its order granting the state's motion, the district court noted appellant's interrogatory responses and the two genetic tests showing that appellant was the father of the child, and adjudicated appellant as the father of the child. The district court concluded that appellant's "detailed

narrative of the relevant events does not unequivocally deny intercourse," and that appellant did not "deny that he was sexually intimate with [respondent]." The district court concluded that appellant's statements did "not clearly and convincingly establish that [he] is not the child's father." This appeal follows.

## ISSUE

In its determination that the evidence of appellant, as a presumptive father under Minn.Stat. § 257.62, subd. 5(b), was insufficient to withstand a motion for summary judgment, did the district court err in considering such evidence in light of his statutory burden to rebut the presumption of paternity by clear and convincing evidence?

## ANALYSIS

Appellant argues that the district court erred by granting summary judgment because there was a genuine issue of material fact regarding whether he and respondent had sexual intercourse during the period of conception, and that the district court applied the wrong standard in granting summary judgment. "On appeal from summary judgment, we review the record to determine whether there is any genuine issue of material fact and whether the district court erred in its application of the law." *Dahlin v. Kroening*, 796 N.W.2d 503, 504 (Minn.2011).

### I.

Rule 56 of the Minnesota Rules of Civil Procedure permits "a court to dispose of an action on the merits if there is no genuine dispute regarding the material facts, and a party is entitled to judgment under the law applicable to such facts." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn.1997). "[S]ummary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, submitted show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." *Id.* (quotation omitted). "When a motion for summary judgment is made and supported, the nonmoving party must "present specific facts showing that there is a genuine issue for trial. If the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Id.* (quotations and citation omitted). "A moving party is entitled to summary judgment when there are no facts in the record giving rise to a genuine issue for trial as to the existence of an essential element of the nonmoving party's case." *Nicollet Restoration, Inc. v. City of St. Paul*, 533 N.W.2d 845, 847 (Minn.1995). "[S]ummary judgment is inappropriate if the nonmoving party has the burden of proof on an issue and presents *sufficient evidence* to permit reasonable persons to draw different conclusions." *Schroeder v. St. Louis Cnty.*, 708 N.W.2d 497, 507 (Minn.2006).

"When a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere averments or denials of the adverse party's pleading but must present specific facts showing that there is a genuine issue for trial." Minn. R. Civ. P. 56.05. Evidence must be viewed in the light most favorable to the nonmoving party. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). "A paternity action is a civil action governed by the rules of civil procedure," including summary judgment. *Johnson v. Van Blaricom*, 480 N.W.2d 138, 140 (Minn. App.1992).

### II.

▉ Appellant primarily contends that he raised a genuine issue of material fact

by "unequivocally stat[ing] on numerous occasions that he and respondent did not have sexual intercourse during the time of probable conception," and by highlighting his assertion that he was on a medication that caused him to be periodically impotent during the relevant time. He also disputes the district court's characterization of his denials as equivocal and argues that he does not have to meet the clear and convincing evidentiary burden in order to establish a reasonable dispute of material fact. While appellant admitted to sexual intimacy with respondent during the probable month of conception, he nonetheless states that he has no recollection of having sexual intercourse with respondent, his medication, "at certain times," made him unable to have sexual intercourse, and he could not "normally" ejaculate. Thus, as appellant concedes that he is a presumed father pursuant to statute and does not otherwise contest the sufficiency of the motion, we must determine the appropriate evidentiary standard applicable to his efforts to withstand summary judgment.

The Parentage Act provides as follows:

If the results of blood or genetic tests completed in a laboratory accredited by the American Association of Blood Banks indicate that likelihood of the alleged father's paternity, calculated with a prior probability of no more than 0.5 (50 percent), is 99 percent or greater, there is an evidentiary presumption that the alleged father is the biological father and the party opposing the establishment of the alleged father's paternity has the burden of proving by clear and convincing evidence that the alleged father is not the father of the child.

Minn.Stat. § 257.62, subd. 5(b) (2012). According to this statute, appellant is the presumed father by virtue of two genetic tests indicating a 99.99% likelihood that he is the father of the minor child and there-fore has the burden of rebutting this presumption by clear and convincing evidence that he is not the father of the child.

In support of his argument that the district court erred in granting summary judgment, appellant primarily relies upon our decision in *Williams v. Curtis,* 501 N.W.2d 653 (Minn.App.1993), *review denied* (Minn. Aug. 6, 1993). In *Williams,* we reversed and remanded a summary judgment adjudication of a presumed father who denied having sexual intercourse with the child's mother during the alleged month of conception, but participated in blood testing indicating that there was a 99.21% likelihood that he was the child's biological father. 501 N.W.2d at 654–55. The presumed father in *Williams* admitted that he was not sterile or unavailable for sexual intercourse with the mother and he had no evidence or knowledge that the mother had sexual intercourse with any other man during the period of conception. *Id.* at 655.

In *Williams,* a case of first impression in light of the statutory presumption and the alleged father's increased evidentiary burden at trial, we declared that "[w]here the evidentiary standard is mandated, 'the judge must view the evidence presented through the prism of the substantive evidentiary burden.'" *Id.* at 655–56 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)). In *Anderson,* which involved a civil action for libel by a limited-person public figure, the United States Supreme Court reversed a lower court ruling that the required clear-and-convincing-evidence requirement need not be considered at the summary judgment stage and that the normal burden of proof in a summary judgment motion was applicable. 477 U.S. at 244, 106 S.Ct. at 2508. *Anderson* held that in ruling upon a summary judgment motion, the court "must be guided by the ...

clear and convincing evidentiary standard in determining whether" there was a genuine issue of material fact regarding the existence of actual malice and must ask whether "a reasonable jury might find that actual malice had been shown with convincing clarity." *Id.* at 257, 106 S.Ct. at 2514–15 (quotation marks omitted).

We concluded in *Williams* that the trial court, at the summary judgment stage of the proceeding, "erred in requiring [the presumed father] to provide clear and convincing evidence to rebut the presumption of paternity. While this is his burden at trial, it is not what is required of [the presumed father] on summary judgment." 501 N.W.2d at 656. Thus, *Williams* held that, to avoid summary judgment, a putative father subject to the statutory presumption need not, in opposing a motion for summary judgment, actually show by clear and convincing evidence that he is not, in fact, the father of the child; the putative father must only show that whether there is a genuinely disputed material fact as to whether, at trial, he will be able to show by clear and convincing evidence that he is not the father. *Id.* In light of this understanding and the particular record at issue, *Williams* concluded that, even applying the *Anderson* standard, it was clear that the presumed father's unequivocal denial of sexual contact with the mother during the month of conception was sufficient for "[a] reasonable jury [to find] that this evidence rebuts the presumption clearly and convincingly." *Id.* at 656–57.

While *Williams* does not explicitly hold that the *Anderson* standard applies to a presumed father's burden to rebut the statutory presumption of paternity, this assertion is consistent with caselaw requiring consideration of a heightened statutory burden to efforts to withstand summary judgment. *Richie v. Paramount Pictures*

*Corp.*, with citation to *Anderson*, held that the "substantive evidentiary burden" requiring defamation plaintiffs to establish actual harm in order to successfully litigate their claim applied to their attempts to survive a summary judgment motion. 544 N.W.2d 21, 26 (Minn.1996) (quotation omitted). Consideration of this ultimate burden did "not change because plaintiffs might be attempting only to survive a summary judgment motion." *Id.* *DLH* "consider[ed] what evidence a nonmoving party must present in order to demonstrate that there is a genuine issue of material fact which presents the need for a trial" by reviewing the "trilogy" of cases decided by the United States Supreme Court in 1986 addressing the Federal Rules of Civil Procedure. 566 N.W.2d at 69. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson*, 477 U.S. 242, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *Williams* was decided after this trilogy, which includes *Anderson*, and *DLH* specifically concludes that the import of the trilogy "is the same" as Minnesota caselaw addressing the burden upon a party resisting summary judgment. 566 N.W.2d at 71.

Other Minnesota cases decided after *Williams* have also required consideration of a heightened burden of proof for purposes of evaluating evidence on summary judgment. *See Chafoulias v. Peterson*, 668 N.W.2d 642, 655 (Minn.2003) (affirming summary judgment where the record did not contain "clear and convincing evidence" of actual malice); *Risdall v. Brown–Wilbert, Inc.*, 759 N.W.2d 67, 72 (Minn.App.2009) (affirming summary judgment determination that securities offerings were integrated and not exempt from registration requirement, noting, with citation to *Richie*, that district court must view the evidence in light of the substan-

tive burden of proof and that a self-serving affidavit failed to fulfill burden), *review denied* (Minn. Mar. 17, 2009); *In re Estate of Martignacco,* 689 N.W.2d 262, 267 (Minn.App.2004) (affirming district court's award of summary judgment based on clear and convincing standard applicable to establishing parentage for purposes of intestate succession), *review denied* (Minn. Jan. 26, 2005); *Special Force Ministries v. WCCO Television,* 584 N.W.2d 789, 792 (Minn.App.1998) (applying clear and convincing standard to anti-SLAPP summary judgment determination of non-immunity based on tortious conduct), *review denied* (Minn. Oct. 13, 1998); *Miller v. Daniels,* 520 N.W.2d 769, 770 (Minn.App.1994) (concluding that district court did not err by awarding, on summary judgment, a right of survivorship as joint tenant to bank accounts to individual listed on accounts as joint tenant with right of survivorship absent clear and convincing evidence sufficient to overcome statutory presumption rebutting documented survivorship rights); *see also Swanlund v. Shimano Indus. Corp.,* 459 N.W.2d 151, 154 (Minn.App. 1990) (declaring that in ruling upon a summary judgment motion, the trial court must consider the substantive evidentiary burden and whether " 'a jury could reasonably find *either* that the plaintiff proved his case by the quality and quantity of evidence required by the governing law *or* that he did not' " (quoting *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513)), *review denied* (Minn. Oct. 5, 1990).

Given this authority, the district court did not err by considering appellant's rebuttal evidence in light of his substantive evidentiary burden of proof. This consideration did not require proof by clear and convincing evidence at the summary judgment stage that he was not the father of the child. Rather, it required him to show that his evidence, which for summary judgment purposes was to be viewed in a light favorable to him, was sufficient for a jury to reasonably find that such evidence clearly and convincingly rebutted the presumption that he was the father of the child.

### III.

Further, we conclude that the district court did not err by granting the motion for summary judgment. The current matter is factually distinguishable from *Williams,* which concluded that the putative father's unequivocal denial of intercourse during the likely period of conception was sufficient to overcome summary judgment, even under the *Anderson* standard. Critically, *Williams* focused on a reasonable dispute with regard to the alleged month of conception; the father denied that he engaged in sexual intercourse with the child's mother during the alleged month of conception, but admitted to sexual intercourse during the previous month. *Id.* at 654, 656. Because that record established that the child could not have been conceived during this previous month, we concluded that "[a] reasonable jury might find that this evidence rebuts the presumption clearly and convincingly." *Id.* at 656–57. *Williams* relied, in part, on our decision in *Nash v. Allen,* 392 N.W.2d 244 (Minn.App.1986), *review denied* (Minn. Oct. 22, 1986). *Nash* reviewed the denial of a motion for summary judgment brought by a county and the mother of a minor child on the issue of paternity when blood tests indicated a 98.864% likelihood that the respondent was the child's father. 392 N.W.2d at 246. The denial of the motion was affirmed because "a factual issue had been raised concerning the actual date and period of conception"; this court noted that the respondent did not deny that he had intercourse with the mother, but claimed that conception occurred approximately one month later.

*Id.* at 247, 249. It was also noted that there were "no facts in the record indicating when conception actually occurred" aside from the disparate allegations. *Id.* at 247.

Appellant also cites *Howie v. Thomas,* 514 N.W.2d 822, 824–25 (Minn.App.1994), in which this court reversed a directed verdict handed down in a paternity action against a presumed father who denied ever having sexual intercourse with the mother. After noting that the tests for summary judgment and directed verdict are not significantly different when a record "includes direct but contradictory evidence on an issue," as well as the presumed father's denial that he had sexual intercourse with the mother, *Howie* reversed the directed verdict "even though a blood test showed a 99.96% probability that [the presumed father] was the father of the child." 514 N.W.2d at 825. *Howie* notes its similarity to *Williams* and assumes that the heightened clear and convincing standard set forth in section 257.62, subdivision 5(b), did not alter its conclusion that, assuming the credibility of the presumed father's denial, there were "no circumstances under existing law where a directed verdict is appropriate when the alleged father has testified that he did not have sexual intercourse with the mother during the period of conception." *Id.*

Based on our thorough review of the record, we conclude that the current matter is distinguishable from *Williams, Nash,* and *Howie.* There is no reasonable dispute that the minor child was born on August 6, 2008, or that the parties engaged in sexual acts in respondent's apartment in early November 2007. *See Williams,* 501 N.W.2d at 656 (taking judicial notice of the "normal 266–day gestation period"). Thus, there is no genuine issue of material fact regarding evidence that appellant had sexual contact with re-

spondent during the month the child was conceived.

Unlike the putative fathers in *Williams, Nash,* and *Howie,* appellant's denials that sexual intercourse occurred were largely equivocal. In his denials, he merely provided self-serving and singular denials that he had no *recollection* of engaging in sexual intercourse with respondent and did not *recall* ejaculating during contact with respondent, and he admitted that he and respondent attempted to engage in sexual acts together so that he was aware that respondent was having her period. Appellant's claims about the effect of his medication were similarly equivocal. Also, unlike these other prior cases, the record in this case contains evidence of multiple testing results, one of which was obtained at appellant's behest. In contrast to these undisputed test results supporting appellant's paternity of the child, there is no medical evidence corroborating or substantiating appellant's assertions that he was sterile or impotent during the probable month of conception.

Given the heightened burden of proof required to rebut the presumption of paternity, the district court did not err by finding that appellant's equivocal claims of episodic impotence did not create a genuine issue of material fact sufficient to withstand summary judgment. At trial, appellant would be required to submit evidence which clearly and convincingly rebuts the statutory presumption under Minn.Stat. § 257.62, subd. 5(b), that he is the father of the child. The supreme court has defined clear and convincing evidence as "more than a preponderance of the evidence but less than proof beyond a reasonable doubt," and is established "when the truth of the facts asserted is 'highly probable.'" *Weber v. Anderson,* 269 N.W.2d 892, 895 (Minn.1978). Here, where there were two genetic tests supporting appellant's

paternity and an admission of sexual contact by appellant with respondent during the month the child was conceived, the district court did not err in concluding that a reasonable jury could not find that appellant's equivocal denial of intercourse and allegations of episodic impotence, if believed, were sufficient to clearly and convincingly rebut the statutory presumption of paternity.

## IV.

■ Appellant also argues that the district court erred in granting summary judgment because such motion was premature in light of respondent's alleged failure to provide him with sufficient information about other potential fathers. He questions respondent's veracity, claiming that her responses to his interrogatories were returned unsworn on two occasions, and that she gave contradictory responses to requests for information pertaining to doctor's appointments. While appellant cites no facts in support of his claim that there may be other potential fathers or that respondent is being untruthful, he claims that such evidence may be obtained through the cross-examination of respondent.

■ The district court did not err by rejecting appellant's speculative claims that there may be other males who had sexual contact with respondent during the month the child was conceived. Respondent unequivocally denied that there were other potential fathers of the child, and appellant did not present any evidence refuting this assertion. It is well settled that the mere suggestion that additional evidence may be obtained through cross-examination is insufficient to establish a dispute of material fact. "A party may not create a fact issue by claiming that the critical facts will be developed through cross-examination at trial." *Johnson*, 480

N.W.2d at 141. Additionally, "[a] party cannot rely upon speculation to demonstrate the existence of a genuine fact issue," and "a party opposing summary judgment must do more than show that there is a metaphysical doubt as to material facts." *Id.* at 140–41; *see also DLH*, 566 N.W.2d at 71 ("[T]here is no genuine issue of material fact for trial when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue.").

In *Johnson*, we held that a father's allegation that a child's mother had sexual intercourse with other men during the period of conception was insufficient to create a genuine issue for trial because it rested "in speculation and innuendo concerning [mother's] alleged lifestyle and past sexual behavior," and the father "presented no specific facts or evidence to support his allegations." 480 N.W.2d at 140–41. Similarly, the district court did not err by concluding that there is no genuine issue of material fact regarding whether other possible fathers exist in the instant case.

## DECISION

In determining the sufficiency of a nonmoving party's attempt to withstand a motion for summary judgment requesting adjudication of paternity of a presumed father under Minn.Stat. § 257.62, subd. 5(b), the district must evaluate the evidence in light of the substantive burden of proof. Appellant's denial that he engaged in sexual intercourse with respondent, as well as his assertions of impotence, were largely equivocal, and there is no genuine issue of material fact regarding the result of genetic testing, the period of the child's conception, or the existence of other possible fathers. Based upon this record, we affirm the district court's conclusion that a reasonable jury could not find that appel-

lant's evidence is sufficient to clearly and convincingly rebut the statutory presumption of paternity.

**Affirmed.**