*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0864**

Mark Sharockman,
Appellant,

vs.

LifeSpan of Minnesota, Inc.,
Respondent.

**Filed January 25, 2016
Affirmed
Johnson, Judge**

Hennepin County District Court
File No. 27-CV-14-1267

Thomas J. Conley, Law Office of Thomas J. Conley, LLC, Minneapolis, Minnesota (for appellant)

Terrance W. Moore, Carol R.M. Moss, Hellmuth & Johnson, PLLC, Edina, Minnesota (for respondent)

Considered and decided by Cleary, Chief Judge; Connolly, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

Mark Sharockman was employed by LifeSpan of Minnesota, Inc., pursuant to a three-year contract. He left the company after two years, at which time he began a job with another employer at a higher rate of compensation. He commenced this action to recover

damages for the compensation that he did not receive from LifeSpan during the third year of the contract period. The district court granted LifeSpan's motion for summary judgment on that claim. On appeal, Sharockman contends that he is entitled to compensation for the third year because LifeSpan terminated him without cause, regardless of his earnings in his subsequent employment. LifeSpan contends that Sharockman is not entitled to any damages because he resigned without a good reason and, in addition, because any loss of income is offset by the greater income he earned from his subsequent employer during the third year of the contract period. We affirm.

**FACTS**

LifeSpan is a provider of children's mental-health services. Sharockman was chief financial officer and executive vice president of the company in 2010 and 2011. His employment with LifeSpan is governed by a written employment agreement, dated January 1, 2010. Paragraph 1 of the agreement provides that Sharockman would be employed for a three-year term. Paragraph 5(c) of the agreement provides that Sharockman would be paid through the last day of his employment if he were to resign without good reason or if LifeSpan terminated him for cause. Paragraph 5(d) provides that Sharockman would be paid through the end of the three-year contract term if he were to resign because LifeSpan committed a breach of contract and failed to cure its breach within 30 days after receiving notice or if LifeSpan terminated him without cause. The full text of paragraph 5(d) is as follows:

> Without Cause or for Good Reason. If Company
> terminates Employee's employment other than (i) for Cause or
> (ii) as a result of Employee's Death or Disability, or if

2

Employee terminates his employment following a breach of this Agreement by Company which is not cured within 30 days after receipt of notice from Employee ("Good Reason"), Employee shall be paid the following: (i) Employee's monthly Base Salary through the end of the current contract term; (ii) Employee's target bonus then in effect, multiplied by the number of years remaining in the current contract term for which no bonus has been paid (rounded up to the nearest whole year); (iii) Employee's accrued but unpaid time off pay (including, but not limited to, vacation) for the year in which such termination occurs, pro rated to the date of such termination; (iv) any unpaid expense reimbursement; and (v) Employee's other accrued benefits, if any, under any of Company's other employee benefit plans (e.g., bonus, profit sharing plan, 401(k) plan), subject to the terms and conditions of those plans.

Paragraph 3(a) of the agreement provides that, in 2010, Sharockman would be paid a base salary of $175,000. Paragraph 3(a) also provides that Sharockman's base salary would increase each year by not less than the average percentage increase in base salary awarded to the other two senior executives. In December 2010, LifeSpan's board of directors increased the base salary of the chief executive officer, Traci Hackmann, by 5% and the base salary of the chief operating officer, Rhonda Suedbeck, by 25%, which was an average increase of 15%. But the board increased Sharockman's base salary by only 5%. In June 2011, Hackmann drafted an amendment to Sharockman's employment agreement that would have provided that Sharockman "voluntarily agreed not to adjust his" base salary for 2011 by a greater amount, but Sharockman declined to sign it.

On December 12, 2011, Sharockman sent an e-mail message to Hackmann and Suedbeck requesting that the company pay him additional compensation on his next paycheck to ensure that his base salary in 2011 was the amount required by his employment

agreement. On December 15, 2011, Sharockman had a meeting with Hackmann. Hackmann testified in deposition that Sharockman resigned during that meeting by "ma[king] it clear to me that he was going to be done being employed by LifeSpan" within 30 days. Sharockman testified in deposition that he did not resign at that meeting but merely told Hackmann that he was in the process of interviewing for another job. Shortly before that meeting, Sharockman had received word that he was the final candidate for a position with another employer. Sharockman actually received a job offer from that employer on December 16, 2011.

In the days following the December 15 meeting, Sharockman negotiated the terms of his subsequent employment. Meanwhile, LifeSpan made various preparations for Sharockman's departure. For example, LifeSpan made plans to remove Sharockman from the company's bank accounts and credits cards and prepared alternative budgets that reflected the elimination of the position of the chief financial officer.

On December 27, 2011, LifeSpan's human resources department sent a company-wide e-mail message with an attached memorandum, which had been drafted by Suedbeck, announcing Sharockman's departure from the company. The memorandum stated:

> This memo is to inform you that Mark Sharockman has chosen to resign from his position as Chief Financial Officer. His last day of work will be Friday, December 30th. We thank Mark for his hard work and dedication during his two years at LifeSpan, and we wish him well in the future.

Later that day, Sharockman sent an e-mail message to Hackmann and Suedbeck in which he stated that he had not previously resigned but nonetheless was providing notice of his

4

resignation in that e-mail message. The full text of Sharockman's e-mail message is as follows:

> Today, a company memorandum was sent out stating that I have resigned from LifeSpan and my last day will be December 30, 2011. I have not tendered my resignation. If I had resigned, it would have been in writing, as required by paragraph 4.d. of my employment agreement. Unless the company memorandum is meant to communicate the involuntary termination of my employment by LifeSpan, it is wholly inaccurate.

> On multiple occasions, beginning with the board meeting on December 9, 2010, I notified the company of its breach of paragraph 3.a. of my employment agreement. As a result, LifeSpan has failed to pay me the salary due pursuant to my employment agreement for all of 2011. Pursuant to paragraph 5.d., I am therefore entitled to terminate my employment agreement for Good Reason. I am now electing to do so, effective January 16, 2011.

Hackmann responded by e-mail the following day, saying that Sharockman had made clear on December 15 that he had another job offer and was resigning.

Sharockman's last date of employment with LifeSpan was December 30, 2011. On January 18, 2012, he began working for the employer that had made him a job offer on December 16, 2011. It is undisputed that his compensation with the new employer was greater in 2012 than what he could have earned at LifeSpan pursuant to his written employment agreement.

In February 2014, Sharockman commenced this action against LifeSpan. Sharockman asserted a breach-of-contract claim and a statutory claim for nonpayment of wages. In July 2014, LifeSpan moved for summary judgment. In November 2014, the district court granted LifeSpan's motion in part and denied it in part. With respect to the

5

sole claim that is relevant on appeal, Sharockman's claim for compensation in the third year of the contract term, the district court granted LifeSpan's motion for summary judgment.[1] The court administrator entered final judgment in May 2015. Sharockman appeals.

## D E C I S I O N

Sharockman argues that the district court erred by granting LifeSpan's motion for summary judgment with respect to his claim that LifeSpan breached the employment agreement by not paying him compensation during the third year of the contract term.

A district court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. A genuine issue of material fact exists if a rational trier of fact, considering the record as a whole, could find for the nonmoving party. *Frieler v. Carlson Mktg. Grp., Inc.*, 751 N.W.2d 558, 564 (Minn. 2008). This court applies a *de novo* standard of review to the district court's legal

---

[1]The district court also granted LifeSpan's motion for summary judgment with respect to Sharockman's claim for damages based on a separate agreement that would have rewarded him for an increase in the fair market value of the company. The district court denied LifeSpan's motion for summary judgment with respect to Sharockman's claim for additional compensation in 2011 and with respect to his statutory claim and determined, *sua sponte*, that LifeSpan is liable on that claim in an amount to be determined at trial. The district court conducted a court trial in January 2015 and found LifeSpan liable for damages in the amount of approximately $12,000. The district court found that LifeSpan is not liable on Sharockman's statutory claim.

conclusions on summary judgment and views the evidence in the light most favorable to the nonmoving party. *RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1, 6 (Minn. 2012).

Sharockman contends that there are genuine issues of material fact as to, first, whether he resigned or was involuntarily terminated and, second, whether his earnings in subsequent employment may offset the compensation that he did not receive from LifeSpan during the third year of the contract period. We begin by considering Sharockman's first contention.

Under paragraph 5(d) of the employment agreement, Sharockman would be entitled to compensation for the third year of the contract term, despite having left the company, in only two circumstances: (1) if LifeSpan terminated his employment without cause or (2) if he resigned because of a breach of contract by LifeSpan *and* LifeSpan failed to cure its breach within 30 days of notice of the breach. The district court reasoned that Sharockman could not prove either of these two circumstances. On appeal, Sharockman concedes that the second circumstance is not triggered. The key question is whether Sharockman has evidence capable of proving the existence of the first circumstance, that LifeSpan terminated his employment without cause.

Sharockman's theory is plainly contrary to LifeSpan's evidence. The memorandum distributed by LifeSpan's human resources department on December 27 states that Sharockman had resigned his employment. Both Hackmann and Suedbeck testified in deposition that LifeSpan did not terminate Sharockman's employment. There is no evidence in the record that LifeSpan ever expressly communicated to Sharockman that the

7

company was terminating his employment. Likewise, there is no evidence in the record that LifeSpan intended to terminate Sharockman's employment.

Sharockman nonetheless contends that LifeSpan terminated his employment. Sharockman asserts that he did not resign his employment before the December 27, 2011 memorandum. That assertion is based on his deposition testimony that he did not inform Hackmann during their December 15 meeting that he was resigning. The district court reasoned that Sharockman's evidence concerning the December 15 meeting creates a genuine issue of material fact as to whether Sharockman informed Hackman at that time that he was resigning his employment. But the factual dispute as to whether Sharockman resigned on December 15 does not necessarily mean that there is a dispute as to whether LifeSpan involuntarily terminated Sharockman's employment on December 27. The district court reasoned that the December 27 memorandum "cannot reasonably read to be a termination notice" and, thus, "[t]here is no material issue of fact that LifeSpan did not terminate Sharockman."

Sharockman challenges the district court's reasoning by contending that, as a matter of logic, he either resigned on December 15 or was terminated, and because he did not resign on December 15, he therefore was terminated. Sharockman's contention is based on the fallacy of the false dichotomy: that only two jointly exhaustive alternatives exist, and no other alternative is possible. *See* Patrick J. Hurley, *A Concise Introduction to Logic* 146-47 (4th ed. 1991). The two alternatives in the first premise of Sharockman's argument are not jointly exhaustive. For example, it is possible that Sharockman did not resign but that the company thought he had resigned. Sharockman cannot foreclose this possibility

8

because he testified in his deposition that he believed the memorandum was "inaccurate" when he received it.  As the plaintiff, Sharockman bears the burden of persuasion on the elements of his claim, which, given his chosen theory, requires him to prove that LifeSpan terminated his employment.  *See Carpenter v. Nelson*, 257 Minn. 424, 427, 101 N.W.2d 918, 921 (1960) ("In the ordinary civil action, . . . the plaintiff has the burden of proving every essential element of his case . . . by a fair preponderance of the evidence.")  In the circumstances of this case, Sharockman cannot prevail merely by pointing to the absence of evidence that he had resigned.

On the question whether LifeSpan terminated his employment, Sharockman contends that "it is reasonable to read LifeSpan's December 27 email as a termination notice" by inferring that "Hackmann invented the story of his resignation on December 15 as a pretext for her decision to fire him in retaliation for his demand for a contractually-mandated salary increase."  Sharockman's brief cites no evidence to support this interpretation of the December 27 memorandum.  Our review of the record indicates that Sharockman did not introduce any evidence to support his contention.  Specifically, Sharockman has no evidence that Hackmann made a decision to terminate Sharockman and no evidence that Hackmann possessed a retaliatory motive based on Sharockman's December 12 e-mail message requesting an increase to his 2011 base salary.  Sharockman did not provide either an affidavit or deposition testimony with such evidence, and his attorney did not elicit any such evidence in the depositions of Hackmann and Suedbeck.  Sharockman has no evidence that contradicts the plain language of the December 27

memorandum, which expresses LifeSpan's understanding of the reason for Sharockman's departure from the company.

Furthermore, Sharockman's contention that LifeSpan terminated his employment is inconsistent with the e-mail message that he wrote to Hackmann in response to the company's December 27 memorandum. He stated in that e-mail message that he was resigning his employment on the ground that LifeSpan had breached the employment agreement by paying him too low of a base salary in 2011. Although Sharockman raised the possibility in the e-mail message that the memorandum was incorrect in saying that he had resigned, he ultimately rejected that interpretation by communicating his decision to resign his employment at that time. Sharockman could not have resigned his employment in that e-mail message if he previously had been involuntarily terminated.

Thus, we conclude that Sharockman does not have evidence that creates a genuine issue of material fact as to whether LifeSpan terminated his employment when it issued the December 27 memorandum. In the absence of such evidence, Sharockman cannot prove his claim that LifeSpan breached the employment agreement by not paying him compensation during the third year of the contract term. Sharockman's claim is based on nothing more than speculation. However, "[a] party cannot rely upon speculation to demonstrate the existence of a genuine fact issue," and "a party opposing summary judgment must do more than show that there is a metaphysical doubt as to material facts." *Johnson v. Van Blaricom*, 480 N.W.2d 138, 140-41 (Minn. App. 1992) (citing *Fownes v. Hubbard Broadcasting, Inc.*, 302 Minn. 471, 474, 225 N.W.2d 534, 536 (1975); *Carlisle v. City of Minneapolis*, 437 N.W.2d 712, 715 (Minn. App. 1989)). For that reason,

10

LifeSpan is entitled to judgment as a matter of law. *See* Minn. R. Civ. P. 56.03; *Frieler*, 751 N.W.2d at 564.

Because our resolution of Sharockman's first argument is a sufficient basis for affirming the district court's judgment, we need not consider Sharockman's second argument.

**Affirmed.**